THE STATE, EX REL. HARRISON, *v.* MENAUGH ET AL.

[No. 18,609. Filed July 1, 1898. Rehearing denied Oct. 14, 1898.]

CONSTITUTIONAL LAW.—*Tenure of Office.*—*Township Trustees.*—The act of February 25, 1897 (Acts 1897, p. 64), changing the time of electing township trustees from the first Tuesday after the first Monday in November, 1898, to the first Tuesday after the first Monday in November, 1900, and every four years thereafter, is a valid exercise of legislative power, and is not unconstitutional as extending the term of trustees elected in 1894 beyond the period of four years, the time allotted by the constitution for the tenure of an office created by

The State, *ex rel*. Harrison, *v*. Menaugh *et al*.

the legislature, as such act does not by its provisions extend the time of the incumbents, and if they continue in office it is by the provisions of section 3, article 15, of the constitution that, "When. ever it is provided in this constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected [and qualified."

From the Whitley Circuit Court. *Affirmed*.

*Thomas R. Marshall, Wm. F. McNagny* and *Philemon H. Clugston*, for appellant.

*Hogate & Clark, W. W. Spencer, C. M. McCabe, B. E. Gates* and *A. A. Adams*, for appellees.

JORDAN, J.—This action was instituted by the relator to obtain a writ of mandate against appellees to compel them to take the necessary steps in order that an election might be held in Columbia township, Whitley county, Indiana, on the first Tuesday after the first Monday in November, 1898, for the purpose of electing a trustee for that township. Each of the appellees filed a separate demurrer to the complaint, which the court sustained, and the relator refusing to amend, judgment was rendered against him for cost. Sustaining these several demurrers constitutes the errors assigned in this court.

The only questions raised and discussed by the parties to this appeal relate to the constitutional validity of an act of the legislature, approved February 25, 1897 (Acts 1897, p. 64). The title of this statute, and the first section thereof, are as follows: "An act providing for changing the time of electing certain township officers, fixing the time when they shall qualify and assume the duties of their respective offices, providing for separate ballots and ballot boxes, and repealing all laws and parts of laws in conflict therewith. Section 1. Be it enacted by the General Assem-

bly of the State of Indiana, That the time for holding
the election of township trustees and assessors shall
be changed from the general election on the first Tues-
day after the first Monday in November, 1898, to the
general election on the first Tuesday after the first
Monday in November, 1900, and at the general elec-
tion on the first Tuesday after the first Monday in No-
vember of every fourth year thereafter. Said town-
ship trustees and assessors shall qualify as now pro-
vided by law, and enter upon the discharge of the
duties of their respective offices at the expiration of
ten days after such election." Section 2 provides that
the time of holding the election of justices of the
peace, constables, and other officers of the township
shall remain as now fixed by law. Section 3 declares
that, "the election of said township officers shall be
conducted under the provisions of the law governing
said general elections." The fourth section relates to
the ballots and ballot boxes to be used at the election
of township officers. The fifth section repeals all laws
in conflict with the act.

It is insisted by counsel for appellant that as this
act is invalid by reason of its being repugnant to the
constitution, therefore the law of 1893 (Acts 1893, p.
192, section 6290, Burns' R. S. 1894) whereby the time
of holding the election for township officers was
changed from April to the first Tuesday after the first
Monday in November, 1894, and every fourth year
thereafter, is still in force, and consequently the elec-
tion of township trustees must be held at the Novem-
ber election in 1898. It will be observed that the act
of 1897, *supra*, applies only to township trustees and
assessors, and changes the time of the election of these
officials from the general election in November, 1898,
as provided for by the act of 1893, to the general elec-
tion in November, 1900, and every fourth year there-

The State. *ex rel.* Harrison, *v.* Menaugh *et al.*

after; and further provides that these officers shall qualify and enter upon the discharge of the duties of their respective offices at the expiration of ten days after such election. The time of electing justices of the peace, constables, and such other township officers as may be provided for by law, is left unchanged, and remains as fixed by the act of 1893, *supra.* If the act of 1897 is a valid exercise of legislative power, no election of township trustees and assessors can be held by reason thereof, until the general election in November, 1900, unless the legislature at its next session provides for one to be held at an earlier time.

Appellant's learned counsel challenge the constitutional validity of the law in controversy, upon the ground that it extends the term of trustees elected in 1894 beyond the period of four years, the time allotted by the constitution for the tenure of an office created by the legislature. Or, in other words, they virtually contend that, as section 2, article 15, of the constitution inhibits the General Assembly from creating any office, the tenure of which shall be longer than four years, that by this inhibition the legislature has no power to extend the term of a township trustee beyond the period of four years, which it is contended the act of 1897, as a necessary result, does, in respect to trustees elected at the November election in 1894, and therefore it is in violation of this provision of the constitution. Counsel assert that, as under the provisions of the act in question, the election of trustees being postponed until November, 1900, the result will be that the present incumbents will hold for two years beyond the constitutional limit. They say: "Of course, this act does not expressly appoint the present incumbents, but it does produce that result, and we contend that in the consideration of the act, we must look to the results, and, where the results would be

absolutely repugnant to the constitution, a law cannot be upheld."

It is conceded that under article 2, section 14, of the constitution, the right to provide for or fix the time for holding township elections is reserved for the legislature, but the contention seems to be that this provision of the constitution contemplates that elections for township officers must at least be held once in every period of four years, and therefore the legislature has no power to enact a law like the one in dispute, which operates in changing or postponing the time for electing trustees beyond the quadrennial period.

Before reviewing the cardinal question involved, we may say that if the objections urged by appellant against the validity of the act of 1897 can be sustained, then the effect of such holding would certainly result in striking down the act of 1893, under which the relator seeks to compel appellees to hold an election in November, 1898. Unquestionably it can be said of the latter act that it is impressed with the same infirmities which are alleged to exist against the statute of 1897. It expressly changed or postponed the time of electing trustees and other township officers from the first Monday in April, 1894, as provided by the amendatory act of 1889 (Acts 1889, p. 425), to the time of holding the general election in November, 1894, and every fourth year thereafter, and thereby, if the argument of counsel for appellant is sound, extended the holding of the trustees elected in April, 1890, three months in excess of four years. It will be seen that trustees elected at the April election, 1890, by reason of the provision of the act approved March 9, 1889 (Acts 1889, p. 344), entered upon the discharge of their duties on the first Monday in August of that year, and the time of electing their successors being

fixed by the act of 1893 on the first Tuesday after the first Monday in November, in 1894. Thus, if the reasoning of appellant can be accepted as correct, it operated to extend their terms three months, at least, over or beyond the constitutional limit of four years; and, in accordance with the insistence of counsel, for this reason the act of 1893 must be condemned for violating the constitution in like manner as does the act of 1897, and, without further legislation, the law of 1889 would control, and the time for holding an election under the latter would not again occur until April, 1902. But this would not be the only result which would follow a decision of this court adverse to the validity of the act of 1897. The act of 1893 being unconstitutional and void under appellant's contention, consequently there was no legal authority for electing township trustees and assessors at the November election in 1894, and therefore the present incumbents would not be legally entitled to hold their offices, and could be ousted therefrom, and those whom they succeeded might be, if they desired, reinstated into the offices which they, as it might be said, without authority of law, surrendered; and no doubt numerous suits would be instituted on the part of trustees-and assessors elected in 1890 against present incumbents, to obtain possession of the respective offices, together with the past emoluments thereof.

Passing these features of the case, however, as of no present consequence, in view of our ultimate conclusion, they being mentioned merely to show the deplorable results which would follow an adverse decision on the validity of the act in question, in the event our views on the law constrained us so to decide, we proceed to consider and determine the real question in controversy between the parties.

It becomes necessary for us to refer to and examine

certain provisions of the constitution which the parties to this appeal insist have a material bearing upon the decision of the questions presented. It must be remembered that under article 4, section 1, of the state constitution, all legislative authority is lodged in the General Assembly, and as regards this authority, that body is considered supreme and sovereign, subject to no restrictions except those which the state constitution expressly or impliedly imposes, and the restraints of the federal constitution and the laws and treaties passed and made pursuant thereto. Aside from these inhibitions or restrictions, the legislature may be said to be unfettered in the exercise of the power with which it has been invested. This doctrine has been repeatedly affirmed in many of the decisions of this court. See *Beauchamp* v. *State*, 6 Blackf. 299; *Beebe* v. *State*, 6 Ind. 501, 63 Am. Dec. 391; *Lafayette, etc., R. R. Co.* v. *Geiger*, 34 Ind. 185; *Mount* v. *State, ex rel.*, 90 Ind. 29, 46 Am. Rep. 192; *Robinson* v. *Schenck*, 102 Ind. 307; *Hovey* v. *State, ex rel.*, 119 Ind. 395; *Hancock* v. *Yaden*, 121 Ind. 366; *State, ex rel.*, v. *McClelland*, 138 Ind. 395; *Townsend* v. *State*, 147 Ind. 624.

The sole contention of appellant, as previously stated, is that the statute in question is antagonistic to the fundamental law of the State. As against this attack upon an act of the legislative department, this court must indulge all reasonable presumption in favor of its validity; and, guided by a well settled rule, we cannot consistently declare the statute in controversy invalid unless it is clearly, palpably, and plainly shown to be violative of the constitution, so as to remove all reasonable doubts that may exist in the mind of the court in respect to its alleged invalidity. *State, ex rel.*, v. *McClelland, supra; State* v. *Gerhardt*, 145

Ind. 439; *Townsend* v. *State, supra.* Being therefore required to give the benefit of all reasonable doubts in favor of the validity of the act of the lawmaking power, it is consequently incumbent upon him who assails its validity to establish affirmatively and clearly his charge to the exclusion of all such doubts. Especially must this rule prevail in view of the fact that the legislature is invested with plenary power for all purposes of civil government. Therefore an inhibition to exercise a particular power is an exception, and the burden must rest upon the party who questions the validity of a statute to show that it is forbidden. *Jamieson* v. *Indiana, etc., Gas Co.*, 128 Ind. 555, and cases cited; *State, ex rel.*, v. *McClelland, supra*; Cooley Const. Lim. 105.

It was well said by Chief Justice Black, in *Sharpless* v. *Mayor, etc.*, 21 Pa. St. 147, on p. 161 of the opinion, as follows: "The constitution has given us a list of the things which the legislature may not do. If we extend that list, we alter the instrument, we become ourselves the aggressors, and violate both the letter and the spirit of the organic law as grossly as the legislature possibly could. If we can add to the reserved rights of the people, we can take them away; if we can mend, we can mar; if we can remove the landmarks which we find established, we can obliterate them; if we can change the constitution in any particular, there is nothing but our own will to prevent us from demolishing it entirely." It may be true, perhaps, as counsel for appellant would seem to insist, that the great power conferred upon the legislature may be and sometimes is abused, but the remedy for this evil lies in an appeal to the people, who, in their sovereign capacity, can correct it, and not by appeal to the judiciary. There is no reason for assuming that the mere abuse by the legislature of its power was in-

tended to be corrected by the courts. *Brown* v. *Buzan*, 24 Ind. 194; *State, ex rel.,* v. *Kolsem*, 130 Ind. 434. If the latter should assume to protect the people against the abuse of power upon the part of their own servants or representatives, it would be the equivalent of attempting to protect the people against their own abuse. We have repeatedly affirmed that the question whether an act of the General Assembly is politic, expedient, or necessary is one of legislative discretion, which is not subject to judicial review; and we have not the liberty to declare a statute void because it is not in harmony with our opinions in respect to policy, expediency or justice. If the people are aggrieved by the action of their representatives in the General Assembly, the way to redress the wrong is open to them at the next biennial election. The question in this case with which we have to deal is not whether the power to change or repeal a statute relative to the time of the holding of township elections has been conferred upon the legislature, but whether such power has been restricted or withheld by the organic law of the State. Article 2, section 14, of the constitution provides that "All general elections shall be held on the first Tuesday after the first Monday in November; but township elections may be held at such time as may be provided by law, etc." Article 6, section 3, provides that "Such other county and township officers as may be necessary shall be *elected or appointed* in such a manner as may be prescribed by law." (Our italics.) Article 15, section 2, reads as follows: "When the duration of any office is not provided for by this constitution, it may be declared by law * * *. But the General Assembly shall not create any office the tenure of which shall be longer than four years." The express restriction imposed by this last section is that the General Assem-

bly shall not create any office the prescribed term of which is longer than four years. Section 3 of the same article provides that "Whenever it is provided in this constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified." Tested by any or all of these provisons, and it is evident, we think, that no express or implied antagonism can be held to exist between any of them and the statute in dispute. We are of the opinion that the constitution will be searched in vain to discover any restriction against the enactment of a statute of the character or purport of the one here involved. That the creation of the office of township trustee, under our constitution, is a matter which is left wholly with the legislature, is undisputed. It may or may not, in the exercise of its discretion, create such an office, but if it chooses to do so, the tenure prescribed cannot be in excess of four years. Within this limit, the legislature, in its discretion, may enlarge, abridge or otherwise change the term of the office, or abolish it entirely, and repeal all laws pertaining thereto. *State, ex rel.,* v. *Bell,* 116 Ind. 1; *State, ex rel.,* v. *Bogard,* 128 Ind. 480.

The electors of this State have no unalterable right to elect township trustees at the polls, for, as we have seen, the legislature, under the constitution, has the power to provide that they may be chosen by election or appointment. The constitution in no uncertain terms declares that *"township elections may be held at such time as may be prescribed by law."* (Our italics.) The power to fix the time at which the people may elect township officers is by this provision of the constitu-

tion left entirely with the legislative department. This power is a continuing one, and surely it cannot be said to be exhausted by being once exercised. The legislature may from time to time direct when the election shall take place. That the General Assembly may, unless restricted by the constitution, amend, change, or repeal the acts of its predecessors, is a right which cannot be successfully questioned. Its power to make a reasonable change in the time of holding township elections from that fixed by a previous law, is certainly a legitimate exercise of the power with which it is invested. *Wall* v. *State,* 23 Ind. 150; *State, ex rel.,* v. *Haworth,* 122 Ind. 462; *Bloomer* v. *Stolley,* 5 McLean 158; *Jordan* v. *Bailey,* 37 Minn. 174, 33 N. W. 778.

In *State, ex rel.,* v. *Haworth, supra,* it is said: "To deny power to change, is to affirm that progress is impossible, and that we must move forever 'in the dim footsteps of antiquity.' But the legislative power moves in a constant stream, and is not exhausted by its exercise in any number of instances, however great." In fact, the power of the legislature to fix or change the time of electing township trustees has always been recognized, and not, to our knowledge, until now has it ever been called in question. Formerly such elections were held in April, then changed to October, then back again to April, and subsequently, by the act of 1893, to November. The power or right of the legislature to change the time of electing trustees or other township officers from the time fixed by a former law being recognized, as it must be, as a continuing and existing right or power, the mere fact that the legislature, in the exercise thereof, may deprive the electors for a reasonable time of electing successors to present incumbents, will not alone, op-

erate to render the act providing for the change un-
constitutional, and thereby invalid.

Counsel for appellant seem especially to base their
contention on section 2 of article 15 of the constitu-
tion, which, as we have seen, prohibits the legislature
from creating any office the tenure of which shall be
longer than four years, and their insistence is that
this restriction will prevent the act in question from
being upheld.  It is manifest, we think, that this con-
tention is wholly untenable.  An examination of the
act will readily disclose that it does not profess to
create the office of township trustee, nor to extend the
term thereof beyond the constitutional limit.  It pro-
ceeds upon the theory that the office has been pre-
viously created, and it merely declares as the legisla-
tive will that the time of holding an election for town-
ship trustees, etc., shall be changed from the general
election on the first Tuesday after the first Monday in
November, 1898, to the general election on the first
Tuesday after the first Monday in November, 1900,
and on such day "of every fourth year thereafter."
The trustees and assessors elected thereunder are
thereby authorized to qualify as provided by existing
laws, and enter upon the discharge of their official
duties at the expiration of ten days after such elec-
tion.  These provisions of the law do not appear to us
to be impressed with any constitutional infirmities.
The change or postponing of the time of electing these
officers from the general election in 1898 to the next
general election, cannot be said to be so unreasonable
as to render the law open to judicial condemnation on
that ground, especially in view of the fact that the
members of the General Assembly to be elected at the
coming election in November can change the time of
the election to an earlier date.  The act does not in
any manner profess nor attempt to extend the tenure

of the trustees elected in 1894, nor of those to be elected thereunder in 1900, beyond the constitutional limit of four years. If it provided that the election should be held in 1900 and every fifth or sixth year thereafter, quite a different question would be presented. The statute in question makes no reference to present incumbents. It neither pretends nor attempts to abridge nor enlarge their tenure. In no sense, under its terms or provisions, can it be said to be retrospective, but is wholly prospective, and in no manner does it take into consideration the question as to the holding of any of the present incumbents of the office; and the question as to whether they will hold over under the provisions of section 3 of article 15 of the constitution, or some other provision of the law, until their successors are elected and qualified, remains, under this act, wholly intact. Consequently, if incumbent trustees are permitted to hold beyond four years, it cannot in legal contemplation, be attributed to the provisions of the act in controversy, but will be due to the force and effect of the provision of the constitution last mentioned, which, as we have seen, provides that the prescribed tenure of any office under the constitution, or any law, other than a member of the General Assembly, *"shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified."* (Our italics.) Certainly what results from the force and operation of the constitution itself cannot be said to be unconstitutional. There is some question, it is true, as to whether at common law an officer was entitled to hold beyond his prescribed term. But the general rule of the common law seems to be that, when the term of an office to which one is elected or appointed expires, the power of the incumbent to per-

The State, *ex rel.* Harrison, *v.* Menaugh *et al.*

form the duties thereof is terminated. Mechem's Pub. Officers, section 396, and authorities there cited.

It is elementary that the law abhors vacancies in public offices, and great precaution is usually taken to guard against their occurrence; and courts of this country have not adhered to a strict rule, and in the absence of some express or implied legal restriction, the officer is held to be entitled to hold his office until he is superseded by the election and qualification of another person. *State, ex rel.,* v. *Harrison,* 113 Ind. 434, and authorities there cited; Mechem's Pub. Officers, section 397; Throop's Pub. Officers, section 308. It was no doubt the design of the molders of our fundamental law, by incorporating therein a provision that public officials should hold for their prescribed constitutional or statutory terms, as the case might be, and until their successors are elected and qualified, to guard against the possibility of the office becoming vacant, and the powers and duties of the incumbent being terminated, before some one had been duly selected and qualified, as provided by law, to succeed him. See *Fesler* v. *Brayton,* 145 Ind. 71, 77. In consideration of this constitutional provision, the electors of this State, when, by their ballots, they designate a person to fill a public office the tenure of which is prescribed either by the constitution or some statute, must be presumed to understand and know that the contingent holding of the officer until his successor is elected and qualified, is as much a part of the term for which he is elected as is that which is expressly prescribed and fixed. *Kimberlin* v. *State, ex rel.,* 130 Ind. 120; *State, ex rel.,* v. *Bogard, supra.* Therefore, the contention of appellant that the act in question operates to continue the present incumbents in office until 1900, in opposition to the will of the people, is of

no merit and without force. Mitchell, C. J., speaking for the court, in *State, ex rel.*, v. *Harrison, supra*, in respect to this provision of our constitution, on p. 442 of the opinion, said: "It is certain, therefore, that all offices to which the above constitutional provision applies are held by the same title, or by as high and lawful tenure, after the prescribed term, until the title of the duly elected and qualified successor attaches, as before and during such term." Continuing, on p. 447 of the opinion, he said: "After the expiration of the term fixed by the General Assembly, the tenure or title of the officer is not under or by legislative approbation or authority, but by the continuing and superior authority and approbation of the constitution." See also upon this point, *Commonwealth* v. *Hanley*, 9 Pa. St. 513.

Reliance is placed on the case of *State, ex rel.*, v *Wells*, 144 Ind. 231, and it is cited by appellant to sustain the invalidity which he imputes to the statute in dispute. The decision in that case, however, in view of the question there involved, cannot be invoked as an authority in support of his insistence, but some of the reasoning in the opinion in that case may be said to "fight" on the side of the appellees in this appeal. It is there said: "Certainly a change in the date of an election cannot affect the term of office to be filled. If the office becomes vacant by the change of date of filling it, the constitution makes ample provision therefor by continuing the old incumbent in office until his successor is elected and qualified." Of course the word "vacant," as employed by the writer of the opinion in that case, was used in the sense or meaning of the expiration of the prescribed term of the office. The question involved in the Wells case was, to an extent at least, of like character to the one in controversy in *Griebel* v. *State*, 111 Ind. 369. It was further

said in the Wells case that there could be no election of township trustees except at the time provided by the act of 1893. The decision in that case rests upon the validity of the act of 1893, and its effect was to affirm, impliedly, at least, the validity of that statute. It is certain that a decision by this court adverse to the validity of the law of 1897 would result in uprooting the decision in the Wells case, and would, as heretofore said, pave the way to ousting present incumbents, and to the reinstatement of the trustees and assessors elected at the April election in 1890.

Counsel for appellant have referred us to *People* v. *Bull*, 46 N. Y. 57, 7 Am. Rep. 302. The decision in that case is in no manner helpful to the appellant's side of the issue in the case at bar, for the question there raised was in respect to the power of the legislature, under the constitution of the state of New York, at the expiration of the term of the incumbent of an elective office, to extend, by an express enactment, his term for three years beyond that for which he had been elected. It was therein held that it was not competent, under the constitution of that state, for the legislature to put or continue a person in office in that manner, without an election by the people. In that case, Folger, J., speaking for the court, in the course of the opinion, on p. 68, said: "The constitution empowers the legislature, in the clause first above quoted, to direct the times and manner of the election. This power is not exhausted by being once exercised. It is a continuing power. And the legislature may from time to time, as it sees occasion, direct when, and how the election shall take place." While it is true that the case of *People* v. *Bull, supra,* does in fact deny that the legislature under the then existing constitution of New York, had the power, by express enactment, to lengthen the tenure of the incumbent of the office,

still it also affirms the constitutional right of that body to fix and change, at its discretion, the time when the charter election shall be held, and, to this extent, at least, the case is an authority in support of the right of the legislature, under our constitution, to change the time of holding township elections.

A defect in the argument of appellant, to an extent at least, is that he assumes that the act of 1897 extends the term of the office of township trustees, and his assault on the validity of the law, proceeds upon the ground of his assumption. The legislature of 1869 changed the time of the annual election of county and township officers, and provided for their biennial election, declaring in the act that the first election thereunder should be held on the second Tuesday in October, 1870, and on that day biennially thereafter. (Acts 1869, p. 57). It is a fact well known that many of the county officers throughout the State, whose successors, in the absence of the change in the time of holding the election, would have been elected at the annual October election in 1869, held over, under the provision of the constitution, until their successors were elected, in October, 1870, and qualified, thereby holding and discharging the duties of their respective offices for a year and over beyond the tenure prescribed by the constitution. And yet we have no recollection that the validity of that act of the legislature was ever called in question on the ground that it operated to extend the term of the incumbents holding over beyond the time fixed by the constitution, and the statute stood unchallenged, we believe, until superseded by the law of 1881. Section 4678, R. S. 1881. If the insistence of appellant in respect to the act of 1897 is correct, then it necessarily would follow that the legislature, in 1869, was powerless to change from an annual to a biennial election, and the people would

have either been compelled to change the constitution, or submit forever to the extra expense of holding annual elections.    For a like reason, the legislature would have been fettered and devoid of power to change township elections from April to November, as it did in the act of 1893.    The mere mention of a proposition denying the right or power of the legislative department in this respect ought to suffice to expose the weakness thereof.

If it were necessary to look beyond the decisions of this court for support of the ultimate conclusion reached in this appeal, the case of the *State, ex rel.*, v. *McCracken*, 51 Ohio St. 123, 36 N. E. 941, is directly in point.    The constitution of Ohio provides for the election of a clerk of the court of common pleas, who, as therein declared, shall hold his office for the term of three years, and until his successor is elected and qualified.    The legislature of that state, in March, 1893, by an act, provided that the clerk of the court of common pleas should be elected triennially, and hold his office for three years, his term being fixed by the act to begin on the first Monday in August after his election.    The contention in that case was that the act was invalid because it operated to extend the term of incumbents beyond the time fixed by the constitution.    This the court denied, and sustained the validity of the law, saying, in the course of its opinion, on p. 127: "The assumption, we think, is not warranted. The act in question does not purport to extend the term of the incumbent, nor does it in effect do that. The result of this legislation upon the incumbent depends wholly on the constitution.    If, by virtue of section 16, of article 4, a vacancy is created, then the term of the incumbent is not extended; if, under that section no vacancy ensues, it is the force and effect of the constitution, and not of the statute, which extends

the term." The decision of the supreme court of Missouri in *State, ex rel.,* v. *McGovney,* 92 Mo. 428, 3 S. W. 867, is also in point, to sustain the right of the legislature to make changes in the times of electing public officers.

Other minor objections are made against the validity of the act, among which is that the subject-matter thereof is not sufficiently expressed in the title. There is no merit in this contention, for it is evident that, under the many decisions of this court, the title of the act is sufficient. The law does not, as insisted, attempt to fix the time of electing justices of the peace, constables and other officers of the township; but, as previously said, it leaves the time fixed for the election of such officers unchanged.

From what we have said, and by force of the authorities cited, the conclusion must necessarily follow, that if the incumbent trustees hold and discharge the duties of their offices beyond the term of four years by reason of their successors not being elected and qualified, they will be permitted to do so under the express warrant of the constitution, and not by the act of 1897. It follows that the law in question is, and we so hold, a valid exercise of legislative power, and its validity is therefore sustained, and there can be no election of township trustees and assessors thereunder until the time therein fixed and provided.

The judgment is affirmed at the cost of the relator.

Hackney, C. J., and Howard, J., dissent.

## ON PETITION FOR REHEARING.

PER CURIAM.—Counsel for appellant, in their brief filed in support of the petition for a rehearing, in the main insist that it be granted upon the grounds urged at the former hearing of this cause. Counsel preface their argument by asserting that: "In view of the bit-

ter and intense feeling in many communities of In-
diana at the continuance in office of a number of town-
ship trustees who are looked upon with suspicion by
the people, etc.," they are impressed with the "solemn
duty" to file the petition for rehearing, and "in every-
day language to argue it,   *   *   *   in the hope that
mature consideration has changed the opinion of the
majority of this court, and in the belief that a few
suggestions will lead the minority to modify their
final conclusion." Counsel recognize the fact that the
minority opinion of Judges Hackney and Howard ex-
pressly declares that the final conclusion therein
reached must result in affirming the judgment of the
lower court which denied the right of the relator to
demand that an election for township trustees be held
at the November election of the present year. This
court, under the two opinions in question, may prop-
erly be said to have been unanimous in holding that
the judgment below must be affirmed for the reason
that there was no existing law which authorized the
election of township trustees at the November elec-
tion of 1898. While it is true that the minority opin-
ion in this cause does not agree with the premises
from which the final conclusions of the majority of
the court were deduced, nevertheless, it is evident that
it is nothing more nor less than a concurrence in the
court's final conclusion that the judgment must be
affirmed, and that there could be no election of trus-
tees at the ensuing November election. The material
difference or distinction between the two opinions
consists in the reasoning by which the ultimate con-
clusion in each is reached. That of the majority, as
will be seen, is arrived at by affirming the constitu-
tional validity of the act of 1897; while that of the
minority is reached by denying the constitutional

The State, *ex rel.* Harrison, *v.* Menaugh *et al.*

validity of the act of 1897, and, for like reasons, that of the act of 1893.

As to the assertion of counsel that such a "bitter and intense feeling" exists in many communities against the present township trustees, and which, as counsel for appellant seem to intimate, has, in part at least, actuated them to discharge the "solemn duty" by applying for a rehearing in this appeal, we may say that, in regard to this feeling upon the part of these communities, this court has no concern, and in no wise is it responsible for its existence.

We are informed by counsel's brief of the fact, as they therein assert, that some members of the bar, not of counsel, however, in this case, "for some occult reason," are imbued with the desire to have this cause tried and determined in the "forum of public opinion," and that these particular attorneys declare with "charming frankness" that the majority opinion in this case "is not an opinion, but an argument." If the majority opinion can be said to be impressed with this infirmity, the responsibility therefor should be charged to the writer thereof, and not to the court, for the latter is only responsible for the final result reached in the case. We may also say, in passing, that this tribunal, in the determination of questions involved in causes pending therein, cannot be influenced by any "bitter and intense feeling" that may exist in some communities relative to the merits of such questions. Neither is the judgment of this court in appeals thereto to be molded or controlled in any manner, by means or methods which can be more properly, and with better effect, employed at a "town meeting" or a political caucus, than in a court constituted for the administration of law and justice.

Concluding, we may say that we have again given the questions involved in this cause a careful consider-

The State, *ex rel.* Harrison, *v.* Menaugh *et al.*

ation, and are fully satisfied that the conclusion reached at the former hearing is correct, and in full harmony with well settled principles of law. Considering the principal question involved in this appeal from the final conclusion of either the majority or minority opinion of this court, and it must necessarily follow, as, and is, the unanimous opinion of this court that the petition for a rehearing ought to be denied. It may also be said that appellant's learned counsel, in their criticisms upon the minority opinion, to the effect that the validity of the act of 1893, could not become involved under the complaint of the relator, and that the minority in so holding traveled outside of the record, are certainly mistaken. It is evident that the complaint of the relator is founded upon his theory that the act of 1893 is a valid exercise of legislative power. If the objections, which his counsel urge against the validity of the act of 1897, can be maintained, they will certainly apply with equal force, and for like reasons, in striking down the act of 1893; and he could, therefore, have no standing in court to demand the relief which he does under his complaint. That this result would follow, his counsel, in their argument, from the position which they assume, certainly make evident. The petition for a rehearing is overruled at the cost of the relator.

## DISSENTING OPINION.

HACKNEY, C. J.—I cannot concur in the conclusion of the majority of the court. I am fully convinced that the General Assembly, by the act of 1897, exercised a right expressly denied to it by the constitution. The denial of authority is in these words: "The General Assembly shall not create any office the tenure of which shall be longer than four years." Const. Sec. 2, Art. 15. This clause has frequently and

properly been held to apply to the office, and not to the officer. *Baker v. Kirk*, 33 Ind. 517; *Parmater* v. *State, ex rel.*, 102 Ind. 90; *State, ex rel.*, v. *Barlow*, 103 Ind. 563; *Jones* v. *State, ex rel.*, 112 Ind. 193; *State, ex rel.*, v. *Harrison*, 113 Ind. 434; *Bell* v. *State, ex rel.*, 129 Ind. 1.

In considering it, to avoid confusion, we must look to it as affecting the office, and not as giving or denying any right to the officer. To interpret this clause of the constitution, we are required to ascertain the intent of the people in adopting it,—the thought which they expressed. *Indianapolis Brewing Co.* v. *Claypool*, 149 Ind. 193. "If the general purpose of the instrument is ascertained, the language of its provisions must be construed with reference to that purpose, and so as to subserve it." *Prigg* v. *Pennsylvania*, 16 Peters (U. S.) 612; *State* v. *Arrington*, 18 Nev. 412, 4 Pac. 735; 6 Am. & Eng. Ency. of Law (2d ed.), p. 921: "No court of justice can be authorized so to construe any clause of the constitution as to defeat its obvious ends, when another construction, equally accordant with the words and sense thereof, will enforce and protect them." *Prigg* v. *Pennsylvania, supra.*

What then were the objects of the tenure clause? It is most certainly a limitation upon the power of the General Assembly; it relates to office; it has reference to time, and is definite in the period prescribed. This clause, in similar form, has found its way into the constitution of several of the states, notably California, Florida, Kansas, Nevada, Oregon, and Texas. Its purpose could not have been an idle one. The framers were engaged in a more serious undertaking than in mere empty phrase-making. They were certainly providing a bar against the loss of some right to the people from the encroachment of the legislative department of the government. That right, consid-

ered with reference to the period of time named, could only have meant the right to choose their public servants at least once in four years. There was wisdom in this purpose, for it would prevent the General Assembly from building up a favored class of office holders without responsibility to the people, and whose tenure would depend alone upon the perpetuity of the party controlling the assembly. This purpose would cut off that train of evils which would follow from an official class using its offices in the interest of party, and for its own perpetuity. The clause, interpreted in the light of this purpose, is wise and effective, and no other provision supplies its place. Rejecting this purpose as one of the objects of the clause, and the General Assembly is left free to visit upon the people all such evils. Tenure, then, as applied to the office, must mean the period bounded by the appointments or elections to the office. In this meaning it must be assumed, it was designed that the General Assembly should not violate it directly or indirectly. That after creating the office and providing for elections once in four years, the constitutional limit, the act of 1897, postponing an election for two years, violated the constitution, seems too plain for serious difference of opinion.

Can it be doubted for a moment that an act fixing the period between elections to an office of legislative creation at six years would be unconstitutional? That it would was held in the recent case of *Indianapolis Brewing Co.* v. *Claypool,* 149 Ind. 193. If such an act would fail, why, after creating the office and providing the full tenure, may such tenure be enlarged by a second act? Nor is there sound reason in the conclusion, that in computing the time, that which has already been occupied by legislative sanction should not be added to the new time. What dif-

ference in the result can be said to exist where six years' time has been provided by one act, and where four years has been provided by one act, and another increases such time two years? Certainly, no difference, unless the first should be void as to the whole time, and the last only as to the two years added time. Looking to the objects to be attained by the tenure clause, can we say that its purpose is satisfied when the General Assembly provides a tenure of four years, places an occupant in the office, and then takes away the means of electing a new occupant at the close of the period of that tenure? By postponing the exercise of that privilege for two years beyond the four years limit, the time bounded by the periods of electing is enlarged to six years as certainly as if the act had declared originally that elections to the office shall occur but once in six years. It is not creditable to the wisdom of the framers of the constitution to say that they intended to limit the tenure period to four years, as a limit upon the legislative authority, and, at the same time, intended that the General Assembly might, by intentional jugglery or innocent oversight or misconstruction, so evade the provision as to render it meaningless. Nor can it be said with reason that the framers intended by one provision to create a limitation, and by another to strike it down. If any one of the objects of the clause is defeated by the legislation, our duty is plain, and we must declare the object paramount to the will of the General Assembly. It is true that the act does not expressly provide that the tenure is enlarged; but it enlarges it indirectly as certainly as if it directly provided that the tenure should be enlarged. As to the office of trustee,—indeed as to most offices,—the General Assembly has not said "the tenure shall be" so long, or "the term shall be" so long; but it has usually

been provided that at a given period an election to the office shall be held, and elections thereto shall be held thereafter once in two or four years. The idea thus adopted is that *tenure* and periods bounded by elections are one and the same. Keeping in mind the conclusions that the tenure clause relates to the office and to the periods within which the people reserved the right to elect to such offices as the General Assembly might create, it seems, inevitably, that this act has done indirectly that which could not have been done directly. Nor do we regard the fact that the effect is not permanent as controlling. If the enlargement of the tenure for two or more periods or for all periods is a violation of the constitution, it follows that the enlargement of one period is likewise a violation.

Considering the question with reference to those provisions of the constitution conferring upon the General Assembly the power to create the office of trustee, and to provide the times of election (section 3, article 6; section 14, article 2), we find no support for the proposition that the tenure clause may be disregarded. These various constitutional provisions, construed as other laws or instruments, should be made to stand together as constituting a consistent whole, if possible. So construing them, it must be held that, while the General Assembly may create the office and prescribe and change the times of electing thereto, this must be done within the limits of the expressed inhibition of the constitution. It must be done so as not to enlarge the tenure limit; so as not to deprive the people of the privilege of electing to an office of this character at least once in four years. Nor will it do to say that, in exercising the right to change the time of electing, it may become necessary or indispensable to extend the tenure. Since terms may be

made of different duration, within the four-years limit, and since laws may be enacted to take effect in the future, there is no objection to a provision for a short tenure to fill the interregnum between the expiration of the discarded term and the taking effect of the new.

Considering the questions before us with reference to the hold-over clause of the constitution, I find no authority for the violation of the tenure clause. It is that "whenever it is provided in this constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for a given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified." Section 3, article 15. It is contended with much learning and ability that this provision of the constitution saves the legislation under consideration from the inhibition of the tenure clause. This provision, unlike that of the tenure clause, has reference to the officer and his right to hold the office for the term prescribed by law, and until a successor is elected and qualified. It has no reference whatever to the periods between which the people may be denied the right to elect their officers. One provision has reference to the office, and not to the officer; and the other has reference to the officer, and not to the tenure of the office. It is true, as held in some of the cases, that when one is elected to an office, except that of legislator, he is elected for the prescribed term, and until a successor is elected and qualified, although that may result in a holding of more than four years; but that is neither excuse nor authority for holding that the General Assembly may enlarge the four-years tenure, may deny the people the right of choice

for more than four years. The hold-over clause was designed to save the public service from embarrassment by the failure of the people to elect, or the failure of their choice, from death or other causes, to qualify and assume the duties of the service. It was not designed as authority, and is not even a reasonable pretext for an act denying the right of election or of directly or indirectly enlarging the tenure beyond the limit of four years. Upon this construction of the hold-over clause, we have no question before us involving that provision, since we have no question of a vacancy, and no question of rival claimants to the office, and we decide nothing as to any right to hold over. The exact question here is as to whether the General Assembly may by an act, directly or indirectly, enlarge the tenure of an office of its own creation beyond the period of four years. If it may do so for two years, it may do so for four years or ten years, and until some succeeding session of that body concludes to accord to the people the right guaranteed by the tenure clause to elect their officers. That there are dangers which may result from the denial to the people of the opportunity, within reasonable periods, to elect public officers, is plainly seen. That such possible dangers gave rise to the tenure clause of the constitution I have no doubt. And that the construction of that clause which I maintain is a guaranty against such dangers supplies the strongest reasons in support of that construction.

The case of *State, ex rel.*, v. *McCracken*, 51 Ohio St. 123, 36 N. E. 941, relied upon by the appellees, involved an act providing for the beginning of an official term after the expiration of the term of the incumbent, the right of the incumbent under a constitutional hold-over provision, to continue in the

office until the beginning of the newly fixed term, and the claims of one elected to the office under the new law to take the office before the beginning of the term for which he was elected, namely, upon the expiration of the old term. As we have already shown, none of these questions are before us. The act there in question did not postpone or deny the right of the people to elect, and there was no question made as to the enlargement of the tenure of the office in question beyond constitutional limit. The questions there decided might be pertinent if we were called upon to decide as to the right of the incumbents of the office of trustee to hold over until a successor should be elected and qualified, but they are not pertinent to the questions before us.

The case of *Christy* v. *Board, etc.*, 39 Cal. 1, also cited and relied upon by the appellees, involved a law postponing for two years the election of certain commissioners, the prescribed tenure of whose office was two years. Notwithstanding the repeal of the law for an election at the end of the two years term, votes were cast for successors to the incumbents. The court held that it was within the power of the General Assembly to postpone the election, since the power was given to fix the times of election, but that such power must be exercised with reference to the four year tenure clause of the constitution, which is like our own. It will be seen, therefore, that the case did not involve the tenure clause further than the repeated expressions of the court that such postponement must not exceed the limit of such clause. By the act there in question the people were not denied the right to elect commissioners within the four years limit, but, observing the limit, the tenure was extended to but four years. The reasoning of

the court is in harmony with the conclusion here submitted. The case of *Jordan* v. *Baily*, 37 Minn. 174, 33 N. W. 778, is another case cited by the appellees as supporting their contention. That case involved a law postponing the time of electing for two years, the term having been four years, and the constitutional tenure limit having been seven years. The act did not reach the constitutional limit by one year, and the people were not deprived of the right to elect within the period reserved by the constitution.

Anything said in these cases or others as to extending the terms of incumbents, as to vacancies, and as to holding over, we do not regard as bearing upon the question before us; and upon the question here for decision the cases are clearly distinguishable from this. I realize the full meaning of the rule that the judge should be satisfied beyond a reasonable doubt that the constitution has been violated before he should hold that the General Assembly has exceeded its authority. However, it is not questioned that I have correctly interpreted the tenure clause, and I see no reasonable ground for contention that this clause is not involved before us. The inquiry must be then, has the act violated it? To my mind there is but one answer. I am not to be deterred from giving this answer because the consequences may possibly be to continue in office the incumbents even beyond the time intended by the act. If the act is invalid, its authors must be held to account for the consequences. The constitution is the paramount law, and by it the acts of every department of the government must be tested. If I permitted this legislation to stand against the inhibition of the constitution, I should feel that I had violated that sacred law. I conclude, therefore, that the act

of 1897 violates the tenure clause of the constitution, and is void.

The invalidity of that act, however, does not fully support the appellant's theory that the election should be held in November, 1898, since that theory implies the validity of the act of 1893 (Acts 1893, p. 192), which postponed the elections for trustee from April, 1894, to November, 1894, in exactly the same manner that the act of 1897 postponed the election from November, 1898, to November, 1900. Counsel for the appellees insist that the objections urged by the appellant to the act of 1897 obtain as against the act of 1893, and with this insistence we all concur. The violations of the constitution are of the same character, and differ only in degree; one being a postponement of two years, and the other of seven months, beyond the constitutional period for the tenure of said office. The theory of the petition affirmed the invalidity of the act of 1897, and the validity of the act of 1893 by seeking to require an election under it. We are therefore unable to avoid the consequences of this theory. Counsel for the appellant contend that the people having elected under the act of 1893, the appellees are estopped to deny its validity, and assert that this court so held with reference to the apportionment law, in *Fesler* v. *Brayton*, 145 Ind. 71. In this position, I respectfully submit, counsel are in error. It is the general rule that the constitutionality of an act may be questioned at any time by any one having an interest, excepting that, where to do so, he would gain an unconscionable advantage from retaining benefits derived from such acts and escape the liabilities therefor. An unconstitutional law is as no law; it is as waste paper. The case of *Fesler* v. *Brayton*, *supra*, was not decided upon the ground of estoppel, but was decided upon an ex-

ception to the general rule, which was that a law could not be declared in violation of the constitution, when to do so would defeat the constitution itself, in abrogating the form of government declared by the constitution.

These conclusions should result in affirming the judgment of the circuit court. Whether the incumbents of the office shall hold until the regular election period in April, 1902; whether they, having been elected under an invalid law, hold _de facto_, as against appointees, or whether the General Assembly may provide for the exigency which these invalid laws have created, it is not for us to suggest.

Howard, J., concurs in the foregoing.

### ON PETITION FOR REHEARING.

HACKNEY, C. J.—The appellant's petition, as addressed to the minority opinion, rests, we respectfully submit, upon false premises, i. e., that the validity of the law of 1893 was not in issue; that the appellees were estopped to assert its invalidity, and that the case of _State, ex rel._, v. _Wells_, 144 Ind. 231, holds the act of 1893 to be constitutional. As in _Denney_ v. _State, ex rel._, 144 Ind. 503, the petition sought the relief prayed upon the earlier act, and denied the validity of the later act. The respondents properly, we have no doubt, contended that the entire relief prayed could not be granted, because of the invalidity of the earlier act. It was there held that both acts were in question, the relief demanded affirming one act and denying the other. It would be remarkable if one seeking relief under a law could preclude his adversary from denying the constitutional validity of that law. It would be no less remarkable to hold that the question must be specially pleaded, and could not arise upon demurrer. In considering the question of estoppel

again argued, it must be borne in mind that the person to be estopped, according to the appellant, is not in court. He is the trustee in office, who, in this case, is not a party denying or affirming the right of the appellant to require an election this fall. The issue in this case, as we affirmed originally, is not as to the right of a trustee; it is as to the right of the people to elect a trustee. It was the loss of this distinction by the majority of the court, as the minority conceived, that made the hold-over clause appear to have application to the case.

In the case of *State, ex rel.,* v. *Wells, supra,* the constitutional validity of the act of 1893 was neither mooted nor decided, and, as well said by appellant's counsel, constitutional questions are never passed upon unless necessary to a decision of the case. The constitutionality of laws is assumed where not denied. The minority adhere to their original opinion.

Howard, J., concurs in this opinion.