## SPENCER ET AL. v. KNIGHT.

[No. 22,189.  Filed May 10, 1912.]

1. STATUTES.—*Local and Special Laws.—Judges.—Election.*—The act of March 2, 1911 (Acts 1911 p. 139), changing and fixing the time for the election of probate, juvenile and superior court judges therein designated, and fixing their terms of office, is not in conflict with article 4, §§22, 23, of the state Constitution forbidding local and special legislation "regulating the election of county and township officers, and their compensation." p. 568.

2. STATUTES.—*Local and Special Laws.—Act Fixing Time of Electing Judges Therein Designated.—Application.—Judicial Knowledge.*—The act of March 2, 1911 (Acts 1911 p. 139), changing and fixing the time for the election of judges therein designated, is not a local or special law, but is of as general application as if it had provided generally that it should apply to all such judges throughout the state, since the court knows judicially that the act names all the judges of all the courts of the classes affected existent in the state at the time of its passage. p. 569.

3. STATUTES.—*Local and Special Laws.—Act Fixing Time of Electing Judges Therein Designated.—Judge Shelby Superior Court.*—The act of March 2, 1911 (Acts 1911 p. 139), fixing the time for the election of judges therein designated, is not a local or special

law because it fails to name the judge of the Shelby Superior Court, since it does name "all judges of the superior court of Marion County," and this includes the judge whose duty it is to preside over the Shelby Superior Court as provided for in the act of March 1, 1911 (Acts 1911 p. 103), creating the superior court district of Marion and Shelby counties, and which has been construed as simply an enlargement of the territorial jurisdiction of Room 5 of the Marion Superior Court and as imposing on the judge of Room 5 the duty of holding court in Shelby as well as in Marion county during the remainder of his term, after which the judge should be elected by the voters of both counties. p. 569.

4.  STATUTES.—*Act Creating Shelby Superior Court.—Election of Judge.—Statute Construed.*—The provision in the act of March 1, 1911 (Acts 1911 p. 103), creating the superior court district of Marion and Shelby counties, that the judge shall be elected by the voters of the two counties, does not change his status as one of the judges of Marion county. p. 569.

5.  STATUTES.—*Local and Special Laws.—Act Fixing Time for Electing Judges Therein Designated.—Possible Effect of Future Legislation.*—Where an act fixing the time of electing judges therein designated operates generally throughout the state on all the judges of the classes dealt with now existing, it will not be held unconstitutional as being a local or special law, on the bare possibility that the legislature might add others to the class by a later enactment without providing for their election at the same time. p. 570.

6.  CONSTITUTIONAL LAW.—*Legislative Power.—Validity of Acts.*—The General Assembly is without limitation in its power to enact laws, except those that are placed on it by express provisions of the Constitution or by necessary implications from them, and its act will not be held invalid as being within such inhibition unless such invalidity clearly appears. p. 571.

7.  CONSTITUTIONAL LAW.—*Legislative Power.—Elections.—Offices of Legislative Creation.*—The Constitution contains no express prohibition of power to postpone the time of holding an election to fill an office of legislative creation, and no such prohibition is implied. p. 571.

8.  CONSTITUTIONAL LAW.—*Legislative Power.—Election.—Judges. —Statutory Courts.*—While article 2, §14, of the Constitution implies that all judges of courts of general and appellate jurisdiction are to be elected at general elections, unless provision is made for an election for such officers only, this provision does not, either alone or in connection with others relative to the question, force the conclusion that the legislature is prohibited

from extending the time of electing judges of statutory courts from one biennial general election to the next ensuing one. p. 573.

9. CONSTITUTIONAL LAW.—Statutes.—Act Fixing Time for Electing Judges Therein Designated.—Extension of Terms Beyond Four Years.—The act of March 2, 1911 (Acts 1911 p. 139), fixing the time for electing judges therein named and fixing their terms of office, though resulting in the incumbents holding longer than four years, is not unconstitutional as being in conflict with article 15, §2, since the court cannot say that the act was passed for the purpose of adding two years to the terms of those judges whose terms of four years will expire after the general election in 1912 and before the next biennial election, and there is in the Constitution no denial of power in the legislature to postpone elections and readjust the commencement of the terms of offices, particularly of legislative creation, where the object is to regulate the time of holding elections and not merely to extend the terms of incumbents, and, if under said act the incumbent judges are enabled to hold for longer than four years, the right to hold over comes from the Constitution, article 15, §3, and not from the act. pp. 574, 576.

10. CONSTITUTIONAL LAW.—Statute.—Extending Term of Office.—Legislative Intent.—An act of the legislature clearly intended to extend the terms of present incumbents in office would be violative of the Constitution, article 15, §2. p. 576.

11. CONSTITUTIONAL LAW.—Legislative Power.—Possible Abuse of Power.—Presumption.—The legislature is presumed to exercise its power in good faith, and its act will not be held unconstitutional for the purpose of preventing a possible misuse of power by it. p. 577.

From Marion Circuit Court, (20,915); *Charles Remster,* Judge.

Suit by Edward H. Knight against William W. Spencer and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*William A. Ketcham* and *George H. Batchelor,* for appellants.

*Reginald H. Sullivan* and *Ferdinand Winter,* for appellee.

Cox, J.—Appellee, a voter and taxpayer of Marion county, sued to enjoin appellants, as the board of primary election commissioners of that county, from giving notice

that candidates for the offices of judge of the Marion Superior Court, Room 4, judge of the Probate Court and judge of the Juvenile Court of that county were to be voted for at the primary election for the nomination of candidates to be therein held in 1912, and from placing on the ballots, to be prepared by them and furnished to the voters, the names of any candidates for those offices. But for the passage of the act of March 2, 1911 (Acts 1911 p. 139), relating to their terms and time of election, the successors to the judges just named would have to be nominated and elected at the general election in 1912, as their terms of office would all expire before the succeeding general election in 1914. If the act in question is a valid exercise of the legislative power, their successors cannot be nominated and elected until the general election in 1914. The complaint of appellee was based on the theory that the act is valid, and appellants demurred to it, asserting, among other objections, that the act violates certain constitutional provisions hereinafter pointed out. The demurrer was overruled, and issue was joined by answer of general denial. At the instance of appellants, the court found the facts specially and stated conclusions of law thereon, which sustained the act and appellee's contention. Judgment followed accordingly, enjoining appellants as prayed. From this judgment appellants appeal, and assign as errors the ruling of the court on their demurrer to the complaint and in stating conclusions of law.

Counsel for appellants, acting in accordance with the instructions of their clients, expressly waive the assertion of any irregularities or minor questions growing out of these rulings, and found their appeal only on the unconstitutionality of the act of 1911, *supra,* which is entitled, "An act changing and fixing the time for the election of certain probate, juvenile and superior court judges in the State of Indiana, fixing their terms of office and repealing all laws in conflict therewith."

Omitting the enacting clause the act reads as follows: "Section 1. That at the general election to be held in November, 1914, there shall be elected one judge for the superior court of Madison county, one judge for the superior court of Elkhart and St. Joseph counties, all judges for the superior court of Lake county, one judge for the superior court of Laporte and Porter counties, one judge for the superior court of Tippecanoe county, one judge for the superior court of Allen county, one judge for the superior court of Vanderburgh county, one judge for the superior court of Vigo county, one judge for the superior court of Grant and Delaware counties, all judges for the superior court of Marion county, one judge for the probate court of Marion county and one judge for the juvenile court of Marion county.

"Section 2. At the general election to be held in November, 1918, and every four years thereafter, judges shall be elected for all the courts above mentioned. Said judges shall hold their office four years and until their successors are elected and qualified.

"Section 3. There shall be no election held at the general election in November, 1912, for the purpose of electing any of the above named officers.

"Section 4. All laws and parts of laws in conflict herewith are hereby repealed."

As the first objection to the act, it is claimed that it is in conflict with article 4, §§22, 23, of our state Constitution, forbidding and restraining local and special legislation, and particularly that clause of section 22, prohibiting laws "regulating the election of county and township officers and their compensation." It is urged by counsel that the words of the title of the act fix its import to be, to change the time of the election of *certain* of the superior, probate and juvenile judges of the State only, and not all of them; and that this intent is emphasized and particularly stated in the first section of the act by

specifically designating such judges of certain counties of the State who are to be affected by its provisions. From this the contention follows that as the act does not purport to apply to the election of all judges of the classes named, it is not of general application, but a local and special law, and prohibited. The act must stand unaffected by this

2. contention. This court has judicial knowledge that the act names all of the judges of all of the courts of the classes affected existent in the State at the time of its passage; and therefore, naming all of them, it is of as general application as if it had provided generally that it should apply to all. But counsel claim that, in fact, all such

3. judges are not named in the act; and to sustain their claim they point to the creation of a superior court district consisting of Marion and Shelby counties by the act approved March 1, 1911 (Acts 1911 p. 103), and the fact that the act assailed does not name the judge of the Shelby Superior Court. It does name, however, "all judges for the superior court of Marion county," and this includes the judge whose duty it is to preside over the Shelby Superior Court. In construing the act creating the superior court district of Marion and Shelby counties, this court held that no new and independent superior court in Marion county and in Shelby county was created; but that the territorial jurisdiction of Room 5 of the Marion Superior Court was simply enlarged so as to include the neighboring county of Shelby, and that the duty was imposed upon the judge of Room 5 to hold court in that county as well as in Marion county during the remainder of his term, after which the judge should be elected by the voters of both counties. *State, ex rel.,* v. *Bartholomew* (1911), 176 Ind. 182, 95 N. E. 417.

The provision for the election of such judge by the voters of the two counties does not change his status as one of the judges of the superior court of Marion county. It

4. necessarily follows that if the act sought to be overthrown has lawfully postponed the election of "all

judges for the superior court of Marion county" until 1914, it carries a postponement of the election of a successor to one of them by the voters of Marion and Shelby counties.

It is further urged that even if all the judges of the classes included are named, the act is still special and local, because, by the specific designation of the courts affected, its operation is forever confined to them; and that if other courts of the classes involved should be created by the General Assembly at its session in 1915, without provision for the election of the judges thereof in 1918, the election of such judges would not come within the act under consideration, but they would have to be elected in 1916, under general provisions relating to elections; and this possibility, it is contended, makes it local and special. We are not greatly impressed with this view of the question. The act operates generally throughout the State on all the judges of the classes dealt with now existing. And we can see no warrant for declaring it to be now a local and special law and unconstitutional, on the bare possibility that the legislature might add others to the class by a later enactment, without providing for their election at the same time. It would seem in such case that the later statute, rather than the one first enacted, if either, would be subject to the constitutional objections.

The principal assault of appellants on the validity of the act is made in the claim that it is in conflict with the various provisions of the Constitution of the State, providing for general elections biennially, the election of judicial officers by the electors, and forbidding the legislature to create any office the tenure of which shall be longer than four years, in that it denies to the electors the right to elect successors of the officers in question at the general election preceding the expiration of their terms, though a general election will occur at which successors could be elected, thereby extending the terms of the officers in question two years beyond the official tenure of four years fixed by the Constitution.

It is but to reiterate what has been said many times by this court, that the General Assembly is without limitations in its power to enact laws, except only such as are 6. placed on it by express provisions of the Constitution, or by necessary implications from them. And further, that the judgment of the court must be convinced beyond doubt that the statute under consideration, as to its validity, falls clearly within such inhibition. It 7. is not denied, and could not be, that express prohibition of power to postpone the time of holding an election to fill an office of legislative creation is not found in the Constitution. But it is contended that the denial of such power is necessarily to be implied from those provisions relating to offices and elections.

Counsel for appellee cite the case of *State, ex rel.,* v. *Menaugh* (1898), 151 Ind. 260, 51 N. E. 117, 43 L. R. A. 408, and rely upon the decision of the court in that case to sustain the judgment of the lower court in upholding the validity of the act questioned in this. The act before us in this deals with offices of legislative creation as the one considered in that did. It makes no change of any kind in the offices affected or in the powers and duties attached to and imposed on them. The time of election of all of them is merely made uniform. In that case the act of February 25, 1897 (Acts 1897 p. 64, §6983 Burns 1908), by provisions like those of the act under consideration, postponed the election of township trustees from the general election of 1898 to that of 1900. It was assailed by the charge that it extended the terms of the incumbents beyond the general election immediately before their expiration, and added two years to their four years term of office, thus violating provisions of the Constitution. That case was presented to this court by able counsel, and, as is apparent from the opinions rendered in it, was given thorough consideration. The conclusion of the majority of the court was that the act was not open to the objections urged against it. In the case of

*Larned* v. *Elliott* (1900), 155 Ind. 702, 57 N. E. 901, the same objection to the act of 1897 was again presented to the court, and after careful consideration the court, without dissent from any member, adhered to the decision of the question made in the former case.

On the question of whether there was an express or implied inhibition in the Constitution of the extension of the time of holding an election, such as is attempted in this case, it was said in the case of *State, ex rel.,* v. *Menaugh, supra,* at page 268: "The question in this case with which we have to deal is not whether the power to change or repeal a statute relative to the time of the holding of township elections has beeen conferred upon the legislature, but whether such power has been restricted or withheld by the organic law of the State. Article 2, section 14, of the Constitution provides that 'All general elections shall be held on the first Tuesday after the first Monday in November; but township elections may be held at such time as may be provided by law, etc.' Article 6, section 3, provides that 'Such other county and township officers as may be necessary shall be *elected or appointed* in such a manner as may be prescribed by law.' (Our italics.) Article 15, section 2, reads as follows: 'When the duration of any office is not provided for by this Constitution, it may be declared by law * * *. But the General Assembly shall not create any office the tenure of which shall be longer than four years.' The express restriction imposed by this last section is that the General Assembly shall not create any office the prescribed term of which is longer than four years. Section 3 of the same article provides that 'Whenever it is provided in this constitution, or in any law which may be hereafter passed, that any officer, other than a member of the general assembly shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified.' Tested by any or all of these

provisions, and it is evident, we think, that no express or implied antagonism can be held to exist between any of them and the statute in dispute. We are of the opinion that the constitution will be searched in vain to discover any restriction against the enactment of a statute of the character or purport of the one here involved. That the creation of the office of township trustee, under our constitution, is a matter which is left wholly with the legislature, is undisputed. It may or may not, in the exercise of its discretion, create such an office, but if it chooses to do so, the tenure prescribed cannot be in excess of four years. Within this limit, the legislature, in its discretion, may enlarge, abridge or otherwise change the term of the office, or abolish it entirely, and repeal all laws pertaining thereto.''

But it is contended by appellants, the fact that by article 2, §14, of the Constitution the legislature is expressly given the authority to fix the time of holding township elections, while on the other hand it requires judicial elections to be held at the time of holding general elections, unless the body prescribes a separate time for the election of judicial officers only, so differentiates that case from this that it is not controlling. The court, however, in the decision of that case, while referring to article 2, §14, it will be seen, by an examination of its opinion, expressly based its decision upon the other provisions of the Constitution referred to in the quotation made from the opinion of the court, which are equally applicable to all offices of legislative creation, and upon the general proposition that in the absence of express or necessarily implied limitations, which it was asserted were not to be found in the Constitution, the legislature had power to extend the time of electing to an office of its creation.

8. It is true that article 2, §14, implies that all judges of courts of general and appellate jurisdiction are to be elected at general elections, unless provision is made for an election for such officers only, but neither this provision alone, nor in connection with others relative to the

question, forces the conclusion that, as to statutory courts, the legislature is prohibited from extending the time of electing part of such judges from one biennial, general election to the next ensuing one for the purpose of placing such election in a year free from the well-known distractions of an election for President and Governor.

The assertion of counsel for appellants, that there is an implied denial of power to postpone an election where it will result in the incumbent of the office holding longer than four years, because of the provision of article 15, §2, of the Constitution, that "the general assembly shall not create any office the tenure of which shall be longer than four years," is fully considered and answered in *State, ex rel.,* v. *Menaugh, supra,* at page 271, where it is said: "An examination of the act will readily disclose that it does not profess to create the office of township trustee, nor to extend the term thereof beyond the constitutional limit. It proceeds upon the theory that the office has been previously created, and it merely declares as the legislative will that the time of holding an election for township trustee, etc., shall be changed from the general election on the first Tuesday after the first Monday in November, 1898, to the general election on the first Tuesday after the first Monday in November, 1900, and on such day 'of every fourth year thereafter' * * *. These provisions of the law do not appear to us to be impressed with any constitutional infirmities * * *. The act does not in any manner profess nor attempt to extend the tenure of the trustees elected in 1894, nor of those to be elected thereunder in 1900, beyond the constitutional limit of four years. If it provided that the election should be held in 1900 and every fifth or sixth year thereafter, quite a different question would be presented. The statute in question makes no reference to present incumbents. It neither pretends nor attempts to abridge nor enlarge their

tenure. In no sense, under its terms or provisions, can it be said to be retrospective, but is wholly prospective, and in no manner does it take into consideration the question as to the holding of any of the present incumbents of the office; and the question as to whether they will hold over under the provisions of section 3 of article 15 of the constitution, or some other provision of the law, until their successors are elected and qualified, remains, under this act, wholly intact. Consequently, if incumbent trustees are permitted to hold beyond four years, it cannot in legal contemplation, be attributed to the provisions of the act in controversy, but will be due to the force and effect of the provision of the constitution last mentioned, which, as we have seen, provides that the prescribed tenure of any office under the constitution, or any law, other than a member of the general assembly, '*shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified.*' (Our italics.) Certainly what results from the force and operation of the constitution itself cannot be said to be unconstitutional."

On this question the court followed the former declaration of the court in *State, ex rel.,* v. *Harrison* (1888), 113 Ind. 434, 16 N. E. 384, 3 Am. St. 663, where it was held that while the provision of article 15, §2, imposes an absolute restraint against the creation by the legislature of a term of office of longer duration than four years, and that it prohibits a legislative tenure, or right to hold by legislative authority, for a longer period than four years by virtue of one election or appointment, it by no means follows that the provision of §3 of the same article under which offices of legislative creation may be held after the expiration of the term fixed, and until a successor is elected and qualified, is rendered inoperative. This provision, it was there held, adds an additional contingent and defeasible term to the original fixed term, and the right to hold over comes from it and not from the act regulating the time of holding the election for

the office except as it opens the way for the operation of the constitutional provision.

We think the decision in *State, ex rel.*, v. *Menaugh, supra*, is controlling in this. Moreover, the general rule is that it is within the province of the legislature to postpone elections and readjust the commencement of the terms of offices such as are of legislative creation particularly, in which case the incumbents may either hold over, or special elections may be authorized to fill the vacancies thus occasioned until the next general election. Such statutes are not considered in violation of the Constitution, where the object is to regulate the time of holding elections, and not merely to extend the terms of incumbents; but if the legislative intent is clearly to extend the terms of present incumbents in office, the act will fall under the ban of the constitutional provision. 15 Cyc. 343; *Scott* v. *State, ex rel.* (1898), 151 Ind. 556, 561, 52 N. E. 163; *State, ex rel.*, v. *Burke* (1900), 154 Ind. 645, 57 N. E. 509; *State, ex rel.*, v. *McGovney* (1887), 92 Mo. 428, 3 S. W. 867; *State, ex rel.*, v. *Ranson* (1880), 73 Mo. 78, 89; *State, ex rel.*, v. *Tallman* (1901), 24 Wash. 426, 64 Pac. 759; *Wayt* v. *Glasgow* (1906), 106 Va. 110, 55 S. E. 536; note to *State, ex rel.*, v. *Plasters* (1902), 3 L. R. A. (N. S.) 887.

We are not warranted in saying that the act was passed by the legislature for the very purpose of adding two years to the terms of those judges whose terms of four years will expire after the general election in 1912 and before the next biennial election. The legislative purpose leading to its enactment may have been to require the election of all superior, probate and juvenile court judges at the same biennial election, and to select that one in which the election of neither President of the United States nor Governor of the State occurred. The propriety of doing this would be clearly for that body to determine, and the reason for it is obvious.

It is urged upon us that the Menaugh case has been im-

pliedly overruled by the later cases of *Gemmer* v. *State, ex rel.* (1904), 163 Ind. 150, 71 N. E. 478, 66 L. R. A. 82, and *Russell* v. *State, ex rel.* (1909), 171 Ind. 623, 87 N. E. 13. In this however, we cannot agree with counsel. These cases deal with offices created by the Constitution itself, and with provisions in that instrument relating to the terms and election of the officers to fill them, which restrict the power of the legislature over them, which are not applicable to offices of legislative creation. The act which was involved in *Gemmer* v. *State, ex rel., supra,* concerned both constitutional and legislative offices, while the case itself dealt with constitutional offices only. In the opinion of the court it was declared that the act was void as to officers named in the Constitution, without expression as to its validity to the extent that legislative offices were affected.

The singularly able brief of counsel for appellants may well cause doubt of the constitutional power of the legislature to pass laws of the character of those involved in the case at bar and in the Menaugh case. But to doubt merely, is to resolve in favor of the validity of the law. Moreover, the rule declared in that case has been long adhered to, and doubtless induced, in a measure, the act here involved.

To the suggestion that the power will result in abuse and evil practices, which will infringe the rights of the people to elect their officers, we must answer, that we have no authority to overthrow the law to prevent a possible misuse of power by the coördinate branch. We cannot presume that the General Assembly will exercise its power other than in good faith. If it does, it is answerable to the people.

Concluding that the act in question is not overthrown by provisions of the Constitution, the judgment of the lower court is affirmed.

NOTE.—Reported in 98 N. E. 342. See, also, under (1) 36 Cyc. 990; (2, 3 and 5) 36 Cyc. 992; (6) 8 Cyc. 776, 806; (7) 8 Cyc. 775·

(8) 8 Cyc. 775, 806; (9) 29 Cyc. 1397; 3 L. R. A. (N. S.) 887; (10) 29 Cyc. 1397; 13 Ann. Cas. 160; (11) 8 Cyc. 804. As to when a statute will be declared void because conflicting with the Constitution, 48 Am. Dec. 269.