## JOHN O'LAUGHLIN v. PETER CARLSON, County Auditor of Renville County, North Dakota.

(152 N. W. 675.)

**Mandamus proceeding — judgment in — appeal from — nominating petition — county auditor — statute — constitutionality.**

1. An appeal from a judgment in a mandamus proceeding commanding a county auditor to receive and file a nominating petition and print the respondent's name upon the official ballot will not be dismissed merely because the election has been held, where the judgment of the trial court was based solely upon the ground that the statute, under which the then incumbent held such office, was unconstitutional.

**County commissioners — term of office — legislature has power to fix.**

2. Under the provisions of § 172 of the Constitution, the legislature is empowered to fix the term of office of county commissioners.

**Legislative enactment — constitutionality — presumption — organic law.**

3. A legislative enactment is presumed to be constitutional, and will be upheld, unless it is manifestly violative of the organic law.

**Constitution — statute — political questions — construction — government — political departments of.**

4. In construing a constitutional provision or statute, involving questions political or quasi political in their character, courts will always give great consideration to constructions placed thereon by the political departments of the government.

**Term of office — legislature may change — when.**

5. In the absence of a constitutional prohibition, the legislature may change the term of an office even after the election or appointment of the incumbent thereof.

**County commissioners — order of succession — method of determining — legislature may provide — Constitution.**

6. Chapter 123 of the 1913 Session Laws (§ 3264, Comp. Laws), providing a method to determine the order of succession of county commissioners, is not violative of the Constitution of this state.

Opinion filed April 16, 1915.

From a judgment of the District Court of Renville County, *Leighton,* J., defendant appeals.

Reversed.

*H. J. Linde,* Attorney General; *John Swenson,* State's Attorney; *Geo. I. Rodsater,* Assistant State's Attorney, for appellant.

No appearance for respondent.

CHRISTIANSON, J.   This is an appeal from a judgment of the district court of Renville county, in a mandamus proceeding commanding the defendant as county auditor, to receive and file the petition of the plaintiff, John O'Laughlin, for nomination to the office of county commissioner of the second commissioner district of said county, and place and cause his name to be printed on the official ballot to be used at the general election held on November 3, 1914.   The material facts are undisputed and as follows:   That the county of Renville came into existence in the year 1910, being organized out of territory theretofore forming a part of Ward county; that after the creation of the county, the governor appointed three persons to act as county commissioners, who afterwards qualified and assumed the duties of their office, and thereafter divided the county into three county commissioner districts; that the commissioners so appointed held their offices until January, 1911; that at the general election held in November, 1910, a county commissioner was duly elected from each of the three county commissioner districts in said county; that one R. D. Johnson was elected county commissioner from the second county commissioner district, and that on the 14th day of July, 1913, the county commissioners

of Renville county met, and, in accordance with the provisions of chapter 123 of the Session Laws of 1913, drew lots to determine their order of succession, and that upon the drawing of such lots, the said R. D. Johnson drew a term of four years to commence on the 1st day of January, 1913.

(1) The sole question presented by this appeal is whether or not chapter 123 of the Session Laws of 1913 (§ 3264, Compiled Laws), is constitutional. The contention of the relator is that this law is unconstitutional, and that for that reason the term of office of said Johnson as county commissioner of the second commissioner district would be for the period of four years only, from and after the first Monday in January, 1915. The defendant, on the other hand, contends that this law is constitutional, and hence that the term of office of Johnson as commissioner does not expire until January 1, 1917, and hence necessarily no commissioner could be elected for this district at the election to be held on November 3, 1914. As the election has been held, the question of whether or not the judgment appealed from ought to be affirmed or reversed is to some extent moot, but as that decision directly involved the duration of the term of office of R. D. Johnson, the then incumbent, and also involved the constitutionality of the act in question, it is obvious that the real question presented is of great public interest, and still remains unsettled, and under such circumstances this court will determine the real questions at issue. State ex rel. Dakota Trust Co. v. Stutsman, 24 N. D. 68, 139 N. W. 83, Ann. Cas. 1914D, 776. See also Re Madden, 148 N. Y. 136, 42 N. E. 534.

(2) Section 172 of the Constitution provides for a county government by a board of county commissioners, and reads as follows: "Until the system of county government by the chairmen of the several township boards is adopted by any county the fiscal affairs of said county shall be transacted by a board of county commissioners. Said board shall consist of not less than three and not more than five members, whose term of office shall be prescribed by law. Said board shall hold sessions for the transaction of county business, as shall be provided by law." It will be observed that this section expressly provides that the terms of office of the county commissioners shall be prescribed by law.

The first statute in this state relative to the terms of county commissioners appeared as § 575 of the Compiled Laws of Dakota of 1887,

and reads as follows: "The commissioners shall hold their office for the term of three years, except as provided in the statute for the organization of counties, and one shall retire and one be chosen annually, and in counties now organized the order of their election and succession shall remain as now established, and commissioner districts in such counties shall continue as now constituted until changed as provided by law." This territorial statute became part of the laws of this state under the provisions of § 2 of the schedule of the Constitution, and was subsequently adopted as § 1896 of the Revised Codes of 1895.

Section 124 of the Constitution provided that general elections of the state should be biennial and held on the first Tuesday after the first Monday in November. The first election to be held on the first Tuesday after the first Monday in November, 1890. It will be observed that the statute relative to the terms of county commissioners still provided that their terms should be for three years, and that one should be chosen and one retired annually, which necessarily resulted in a vacancy occurring in each odd-numbered year, which had to be filled by appointment. This condition remained until the law was amended by the legislature in 1901 so as to extend the term of the office of county commissioners to four years. And this act (chapter 52, Session Laws of 1901) provided that the vacancies which would occur in the board of county commissioners in the years 1901 and 1903 should be filled in the manner provided by law for the filling of other vacancies in such board. This section was again amended by the legislature in 1903, so as to provide for a method of determining the order of succession of the county commissioners theretofore elected under the provisions of special laws, and was finally embodied as § 2390 of the Revised Codes of 1905, Comp. Laws 1913, § 3264, and reads as follows: "The commissioners shall hold their office for the term of four years, except as provided by law for the organization of counties, and in counties now organized the order of their election and succession shall be as herein provided, and commissioner districts in such county shall continue as now constituted until changed as provided by law; provided, that in all counties in this state, wherein heretofore commissioners have been elected under the provisions of any special law, that at the next regular meeting of the board of county commissioners, immediately after the

taking effect of this article, the county commissioners in such counties shall by lot settle and determine upon the order of their succession, three commissioners to hold their office for four years and two for two years from the first Monday in January, 1903." A reading of the section just quoted discloses that it applies only to counties having five commissioners.

Prior to 1913, several new counties were organized in North Dakota, and at the 1913 session of the legislature, § 2390 was amended to read as follows: "The commissioners shall hold their office for the term of four years, except as provided by law for the organization of counties, and in counties now organized, the order of their election and succession shall be as herein provided, and commissioner districts in such counties shall continue as now constituted until changed as provided by law. Provided, that at the general election next after the organization of a county, either from unorganized territory or from territory segregated by division from another county, one county commissioner shall be elected for a term of two years and two commissioners for a term of four years, and thereafter as provided by law, the order of succession to be determined by lot. Provided, further, that in all counties in this state wherein heretofore commissioners have been elected after the organization of a new county, either from unorganized territory or upon division or segregation from another county, and where all the commissioners now serving were elected for the same term, the county commissioners shall, at the regular meeting of the board of county commissioners next after the taking effect of this act, . . . by lot determine the order of their succession; three commissioners to hold their office for four years and two for two years from the first Monday in January, 1913, in counties having five commissioner districts; two commissioners to hold their office for four years and one for two years from the first Monday in January, 1913, in counties having three commissioner districts." Chapter 123, Session Laws of 1913; § 3264, Compiled Laws.

(3–4) As already stated, the only question presented for our determination on this appeal is whether or not the act just quoted is constitutional. It is a well-settled principle of constitutional law, that a law enacted by the legislature is presumed to be constitutional, unless it is shown that it is manifestly violative of the organic law. And

the courts will construe statutes so as to harmonize their provisions with the Constitution,—if it is possible to do so,—to the end that they may be sustained. 8 Cyc. 801–803; Black, Const. Law, p. 58; State ex rel. Baughn v. Ure, 91 Neb. 31, 135 N. W. 224. The authority to fix the duration of the terms of office of county commissioners is, by the Constitution, expressly vested in the legislature. This matter relates directly to the government of counties, and hence is largely of a political or quasi political character. And in cases of that kind, courts will always give great consideration to constructions placed on constitutional provisions, or statutes, by the political departments of the government. 8 Cyc. 727; Cooley, Const. Lim. 5th ed. pp. 49–54. See also Black, Const. Law, p. 59.

(5–6) Plaintiff contends that the legislature, under the provisions of the law in question, in effect appointed the then incumbents of the office of county commissioners in several counties of the state for an additional term of two years. We do not believe that this contention is tenable. As already indicated, the laws in force at the time of the enactment of chapter 123 of the 1913 Session Laws, Comp. Laws 1913, § 3264, made no provision for determining the order of succession in counties having only three commissioners, and it seems clear to us that the purpose of the legislature in passing the act in question was to remedy the defect existing in the former law. The same reasons or governmental policy, making it desirable to always have members of previous experience upon the board of county commissioners, apply with equal force to counties having three commissioners as to those having five commissioners. There is nothing to indicate any intention on the part of the legislature to extend the term of office of any particular person or persons holding the office of county commissioner. Any such intention is negatived, as the legislature merely prescribed a method whereby the order of succession might be determined, and the particular persons whose terms of office were so extended would not be known until after the lots had been drawn. And where the Constitution contains no negative words to limit the legislative authority in this regard, the legislature in enacting a law must decide for itself what are the suitable, convenient, or necessary agencies for its execution. Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572. The legislature provided that the order of succession should be determined by

lots. This method is recognized by the Constitution of this state as a proper method of determining the order of succession to an office. Constitution of North Dakota, § 92. It is true the office of county commissioner is created by the Constitution, but the term of office is expressly left to be determined by the legislature without any limitation as to the duration thereof, and, in the absence of a constitutional prohibition, the legislature may change the term of an office even after the election or appointment of the incumbent thereof. 8 Cyc. 954; Mechem, Pub. Off. § 389; 2 McQuillin, Mun. Corp. §§ 486, 494; Throop, Pub. Off. § 305.

Every presumption is in favor of the propriety and constitutionality of the legislation, and improper motives in its enactment are never imputed to the legislature. The object attempted to be accomplished by the legislature by the enactment of the act in question was clearly to extend the provisions of the then existing laws to counties having only three commissioners, so as to make it possible for such counties to determine the order of succession of its county commissioners and thereby obtain the benefit of always having some experienced men as members of the board of county commissioners. The mere fact that as an incidental result, the terms of the then incumbents were extended, would not of itself show any intention on the part of the legislature to deprive the office of county commissioner of its elective character, or evince any intention on the part of the legislature to exercise the appointive power. And it is generally held that the legislature has the power to pass general laws for the purpose of obtaining uniformity in official terms, or a proper order of succession; and the mere fact that as an incident thereto the incumbents of such offices are permitted to hold over for a limited time does not invalidate such legislative enactment. Jordan v. Bailey, 37 Minn. 174, 33 N. W. 778; Christy v. Sacramento County, 39 Cal. 3; State ex rel. Teague v. Silver Bow County, 34 Mont. 426, 87 Pac. 450; Spencer v. Knight, 177 Ind. 564, 98 N. E. 342; Graham v. Roberts, 200 Mass. 152, 85 N. E. 1009; State ex rel. Godard v. Andrews, 64 Kan. 474, 67 Pac. 871. See also 29 Cyc. 1397.

It should also be observed that § 172 of the Constitution, while creating the office of county commissioner, does not in terms provide that such office shall be either appointive or elective. This is a significant

fact, when considered in connection with §§ 150 and 172 of the Constitution, which expressly provide that certain other designated county officers shall be elected. It is unnecessary for us, however, to determine in this action whether or not the legislature could abolish the elective character of the office of county commissioner, and provide that such office should be filled by appointment. We are entirely satisfied that the legislature had the right to change the term of office of county commissioners, as well as to provide for an order of succession of such officers in the various counties in the state. And as it is obvious that, under such circumstances, vacancies naturally would result, it follows as a necessary incident that the legislature would have the right to provide a method for filling such vacancies. This was expressly recognized and acted upon by the legislature in the act relative to county commissioners adopted in 1901.

Under our Constitution, no limitation is placed upon the power of the legislature as to the method to be prescribed for filling such vacancies. And even though it be conceded that in this case the legislature exercised appointive power, and sought to fill the prospective vacancies in the offices of county commissioners by appointment, this would not necessarily render the act unconstitutional as an excess of the powers of the legislature. In considering the question of whether or not the power to appoint to office to fill vacancies was an inherent and implied executive function, or might, in a certain sense, be exercised by the legislature, this court in the case of State ex rel. Standish v. Boucher, 3 N. D. 389, 395, 21 L. R. A. 539, 56 N. W. 142, said: "It is conceded in this case, as it must be in all cases arising under our political institutions, that the sovereign authority, the people, in creating a state government, can lodge the authority to appoint its officers in any branch of that government, or bestow it at pleasure upon any official upon whom they may elect to bestow the same. In granting such power it may be conferred in full measure, and without limitation, or it may be conferred only to a limited extent. . . . Just at this point it may naturally be asked, since the power of the governor to appoint to office extends only to cases of vacancies not otherwise provided for, and since there is no express grant of appointing power in the Constitution to any other functionary or department of government, where does the power of appointment of officers and their successors in

office rest?  *The power to appoint to office is an attribute of sovereignty.  All attributes of sovereignty essential to the administration of government must be vested in the several departments of government by the people; otherwise, the government founded by the people would not constitute a full grant of governmental power.*  Such government would, to that extent, be defective, for the reason that the people themselves, in their collective capacity, exercise no governmental functions.  Now, we have seen that the power to appoint to the offices in question is not vested by the Constitution in the governor.  Neither is any appointing power vested in judicial department, except to appoint certain court officials.  Unless, therefore, this power resides in the legislature, it is lodged in no part of the government.  As to this it will suffice to say that *all governmental sovereign power is vested in the legislature, except such as is granted to the other departments of the government, or expressly withheld from the legislature by constitutional restrictions.*"  See also Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572.

It follows from what has been said that chapter 123 of the 1913 Session Laws is a valid legislative enactment.  The judgment appealed from is reversed, and the District Court is directed to enter judgment in favor of the defendant for a dismissal of the action, with costs.