In the matter of the application of ARTHUR N. JORDAN for leave to file
an Information in the nature of Quo Warranto against FRANCIS
B. BAILEY.

In the matter of the application of ROBERT L. PENNEY for leave to file
an Information in the nature of Quo Warranto against STEPHEN
MAHONEY.

June 30, 1887.

Municipal Court of Minneapolis—Judges.—The offices of judge and spe-
cial judge of the municipal court of the city of Minneapolis are placed
by law upon the same footing as respects the matter of their election,
term of office, duties, and compensation.

Same—Law Extending Term of Office.—The legislature may make rea-
sonable changes, by amendments to existing laws, in respect to the time
for holding the election of such officers; and in such case incumbents
previously elected for an existing term, and until their successors are
elected and qualified, may hold over during the interval.

Same—Constitution.—Such change will not be deemed unreasonable, nor
the act making it unconstitutional, unless so great as to raise the pre-
sumption of a design substantially to deprive the office of its elective char-
acter. *State* v. *Benedict*, 15 Minn. 153, (198,) followed. Sp. Laws 1885,
*c.* 74, § 3, held constitutional.

An application was filed in this court, in each of the above-entitled
matters, setting out the following facts, viz.:   The respondents Fran-
cis B. Bailey and Stephen Mahoney were elected respectively judge
and special judge of the municipal court of Minneapolis, at an elec-
tion held on the first Tuesday in April, 1883, for the term of four
years and until their successors should be elected and qualified.   On
April 5, 1887, the applicants, Arthur N. Jordan and Robert L. Pen-
ney, were duly elected judge and special judge respectively and as
successors to the respondents.   The applicants duly qualified and
the respondents have refused to surrender the offices upon demand
therefor.   The answers of the respondents allege the following addi-
tional facts, viz.: that the municipal court of Minneapolis was estab-
lished by Sp. Laws 1874, *c.* 141; that this law was amended by Sp.

Laws 1883, *c.* 48, and Sp. Laws 1885, *c.* 74; that the laws of 1883 and 1885 are the only laws regulating the time of election of judge and special judge of the municipal court of Minneapolis between the year 1882 and the present time, and that the alleged election held on April 5, 1887, was void and unauthorized by law, and held without any notice.

*C. H. Benton, Gordon E. Cole, A. D. Smith,* and *T. W. Hammond,* for applicants.

*Shaw, Best & Cray* and *Gilfillan, Belden & Willard,* for respondents.

VANDERBURGH, J. These applications are brought before this court upon orders to show cause why the petitioners should not have leave to file informations in the nature of *quo warranto* against Francis B. Bailey and Stephen Mahoney, present acting judge and special judge of the municipal court of the city of Minneapolis. The petitioners claim to have been elected as the successors in office of Bailey and Mahoney, respectively, at the city election held in April, 1887.

The case turns upon the construction of certain sections of chapter 74, Sp. Laws 1885, amending the "Act to establish a municipal court in the city of Minneapolis." Among other things, the act of 1885 repealed and removed certain limitations upon the authority of the special judge which previously existed. But the amendment did not create a new or different office. It simply provided for increased service to meet the requirements of the increase of business. In the matter of his election, term of office, duties, and powers he is by the statute placed on the same footing as the municipal judge, and if section 2, chapter 48, Sp. Laws 1883, is repealed as to either, it is as to both. The two cases may therefore be considered and disposed of together.

Subject to the provisions of article 6 of the constitution, requiring that a court of this character, created by the legislature, should be inferior to the supreme court, and making the office elective, and limiting the term to seven years, such office is entirely within the control of the legislature. It may abolish as well as create the office. It may change the term after the date of the election, add to or diminish the duties of the judge, and increase or diminish the unearned compensation. *City of St. Paul* v. *Umstetter, ante,* p. 15; *Conner* v.

*City of New York,* 2 Sandf. 355, 369. The legislature may designate
the term, and provide that the incumbent shall hold over until his
successor is elected and qualified; and in such case, if the date of
the election is lawfully changed and postponed, he will be entitled to
continue to occupy the office, within the constitutional limit, until his
successor shall be legally elected and qualified. In other words, there
would be no vacancy in the office, for an office cannot be said to be
vacant while any person is authorized to act in it and does so act.
*Tappan* v. *Gray,* 9 Paige, 507; *State* v. *Benedict,* 15 Minn. 153, (198;)·
*State* v. *Howe,* 25 Ohio St. 588, 596–599.

These petitioners, however, deny that the respondents are the law-
ful incumbents of these offices, because, as they insist, the provisions
of Sp. Laws 1885, c. 74, § 3, postponing the time of the election, and
making the term six years instead of four, are invalid; and they
therefore claim to have been lawfully elected. At the time of the
passage of this act the official term as then existing was four years,
and as provided by Sp. Laws 1883, c. 48, § 2, under which the re-
spondents were elected, they were entitled to hold their offices for
such term, and until their successors were elected and qualified. The
act of 1885, amending the last-named section, provides for an elec-
tion every six years, dating from the general city election in 1883.
The petitioners do not question the purpose of the legislature, by the
amendment, to abrogate the provision for an election in 1887, and
to postpone the time for holding the same; nor, as we understand,
do they dispute the power of the legislature to so change the time of
the election by an act clearly indicating that purpose, apart from and
disconnected with an extension of the existing term of an incumbent.
That is to say, the contention is that, the office being required to be
elective, the legislature cannot lengthen an existing unexpired term
directly or indirectly, and that it must be presumed that the amend-
ment postponing the election would not have been passed if the leg-
islature had understood that they had no constitutional power to con-
tinue the incumbents in office during the interval. But unless the
courts shall undertake to limit and abridge the constitutional control
of the legislature, as respects the right to fix and alter the term of
the office, it must be conceded that it had the power to provide in

express terms that there should be no election for such office until 1889, without further or other provisions. Such an expression of the legislative will could not be ignored by the courts, nor would such an act be unconstitutional.

But precisely the same results would have followed if the act had been in that form. There would have been no vacancy unless the legislature so declared, and the present incumbents would be in the same position in which they are left by this legislation; and if, for any cause, the respondents were not entitled to continue in the office, the petitioners, who could not have been lawfully elected in the spring of 1887, in the absence of any authority for holding an election, would have no special interest entitling them to a writ of *quo warranto,* and the inquiry could only be instituted on the direct application of the attorney general. *State* v. *Benedict, supra; State* v. *Sharp,* 27 Minn. 38, (6 N. W. Rep. 408.) But the expression of the legislative will is hardly less clear in the amendment under consideration; and we do not think the courts would be warranted in holding in the one case more than in the other that the legislative intention was conditioned upon the construction which might ultimately be placed upon the act, as respects the strict legal rights of the incumbents. *People* v. *Bull,* 46 N. Y. 57, 68; *People* v. *Kenney,* 96 N. Y. 294, 303; *Christy* v. *Supervisors,* 39 Cal. 3, 11.

As before intimated, we think it can hardly be questioned that where the constitution provides generally that the legislature may make provision for the election of certain officers, leaving it to carry out such provisions by appropriate enactments, it is fairly within the authority of the legislature, in the exercise of its general powers, to make reasonable changes, by amendment to existing laws, in respect to the times for holding such elections and mode of filling temporary vacancies. *Sprague* v. *Brown,* 40 Wis. 612, 618; *State* v. *Benedict, supra.* From this it follows, we think, that it is fairly within the scope of such legislation to permit incumbents to hold over during an interval except in so far as the constitution clearly limits the exercise of such power, as where it expressly declares that certain officers shall not hold beyond a certain time. Thus the office of register of deeds is required to be elective, (art. 11, § 4;) yet it was held in

v.37m—12

*State* v. *Benedict, supra,* that the legislature might not only declare a vacancy, where the register-elect had died before qualifying, but might, as was done in that case, extend the time for the election of an appointee beyond the next annual election, at which a successor would regularly have been elected, to the end of the second year. The court held that that section of the constitution was satisfied if provision was made by law for the election of such officers at stated periods, unless these periods are fixed at times so far remote from each other as to raise the presumption of a design substantially to deprive these offices of their elective character. And this decision is in conformity with the prevailing legislative usage and construction ever since the adoption of the constitution. The legislature are not at liberty to abuse their authority in such cases, and we cannot presume that it has done so in this case. By the act in question, the terms are made uniformly six years, and it operates to postpone the time for the first election subsequent to its passage for the space of two years. We are not authorized in holding this to be an unreasonable change, and we are not warranted in imputing to the legislature any unworthy purpose in making it, nor is the incidental result that the respondents hold over in the interval, by virtue of the terms of the previously existing statute, in itself sufficient to show an intention to deprive the office of its elective character. We think the case clearly within the rule declared in *State* v. *Benedict.*

The application must be denied.