Wilson v. Clark.

---

ALBERT H. WILSON v. GEORGE A. CLARK, *as Secretary of State, etc.*

No. 12,681.   (65 Pac. 705.)

E. H. HEWINS v. JOHN M. WRIGHT, *as County Clerk, etc.*

No. 12,690.   (65 Pac. 705.)

SYLLABUS BY THE COURT.

1. ELECTIONS—*Biennial Act of 1901 Constitutional.* Chapter 176, Laws of 1901 (Gen. Stat. 1901, §§ 2751–2755), which provides for postponing the election of certain county and judicial officers for periods of a year, with a view to securing uniformity in the commencement of official terms and dispensing with frequent and un-

| 63 | 505 |
| 64 | 489 |
| 64 | 493 |
| 64 | 497 |
| 64 | 749 |
| 64 | 750 |
| 64 | 790 |
| 64 | 867 |
| 64 | 872 |
| 64 | 873 |
| 63 | 505 |
| 69 | 195 |
| 63 | 505 |
| 70 | 446 |

necessary elections, does not conflict with section 2, article 4, of the constitution, providing for annual elections.

2. ——— *Power of Readjustment of Official Terms.* For the purposes named the legislature has constitutional power to readjust the commencement of official terms by postponing elections for a reasonable time, and provisions for the filling of the offices during the interval between the end of one regular term and the commencement of another are not invalid.

3. ——— *Postponement of One Year Not Unreasonable.* While the legislature cannot extend or abridge the terms of office fixed by the constitution, nor postpone elections so long a time as to deprive the offices of their elective character, the postponement for one year for the purposes stated is not deemed to be an unreasonable or unnecessary time, or to indicate a legislative design to make the offices appointive rather than elective.

Original proceeding in mandamus. Opinion filed July 6, 1901. *In banc.* Judgment for defendant.

*G. Polk Cline, H. S. Rogers,* and *A. M. Harvey,* for plaintiffs in error.

*A. A. Godard,* attorney-general, *J. S. West, W. F. Schoch,* and *D. M. Valentine,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : By these proceedings two candidates for office seek to compel the acceptance and filing of their nomination papers. Albert H. Wilson was nominated by the political party to which he belongs as judge of the district court of the thirty-third judicial district ; but when he presented his certificate of nomination to the secretary of state for acceptance and filing it was refused, not because of defects in form or matter, but on the theory that no election for that office is to be held this year.

E. H. Hewins, who was nominated by petition for sheriff of Shawnee county, presented his nomination papers to John M. Wright, the county clerk, who de-

clined to receive and file them, because an election to that office does not occur this year.

In these cases the secretary and county clerk acted in obedience to chapter 176, Laws of 1901 (Gen. Stat. 1901, §§ 2751–2755), which, among other things, provides that no election shall be held for judicial and county offices until the general election of 1902. If this act, the validity of which is challenged, is constitutional, the refusal to accept and file the nomination papers of the candidates named was justified; but if it is void, judicial and county officers are to be elected at the ensuing November election, and the relators are, therefore, entitled to recognition as candidates and to the relief which they ask.

The measure, which seems to have met with general favor and to have been enacted with unanimity, is designed to dispense with the frequency and irregularity of elections, and also to avoid the agitation and expense which attend them. Under former statutes, some of the district judges and several of the county officers were chosen at the general election of every year. The act in question undertakes to revise the electoral system and readjust the beginning of terms, by providing that all county officers, except county commissioners, shall be chosen at the same general election, and that judicial officers shall only be elected every two years, when state and county officers are elected. To accomplish this purpose and introduce uniformity, the election of county officers who would, under the old order of things, have been chosen at the election in 1901, was postponed until the election in 1902, and judicial elections which would have occurred in certain districts in the odd years were postponed for one year, and required to be held in the even years. This action necessarily left an interreg-

num of one year between the end of one regular term
and the commencement of another, and as to the ju-
dicial officers, the act provided that the interval should
be filled by appointment of the governor, leaving the
interregnum, so far as the county offices are con-
cerned, to be supplied under the general provisions of
the law.

It is contended by the relators, who desire to have
an election held this year, that the act conflicts with
several provisions of the constitution. Indirectly, it
is said to conflict with the provision that "general
elections shall be held annually on the Tuesday suc-
ceeding the first Monday in November."
(Art. 4, § 2.) It is also said to contra-
vene the general policy of this state that officers shall
be elected by the people, except to fill vacancies, and
that vacancies can only occur where the incumbent
resigns, dies, or forfeits his office, and that the gov-
ernor cannot appoint officers except to fill such va-
cancies. There is a further contention that the act,
in effect, extends the terms of certain officers beyond
the periods limited by the constitution. As to the
first proposition, we are clear that the act in no way
violates the provision for annual elections. Mani-
festly there was no purpose to destroy or interfere
with that regulation. The constitution does not pro-
vide how many nor what particular officers shall be
chosen at any election. It certainly was never the
intention that each officer should be elected at each
annual election, because the official tenure of some of
the offices named in the constitution is two years,
that of some of the others is three years, and for still
others it is four years. The provision simply declares
that annual elections shall be held on the Tuesday
succeeding the first Monday in November, and was

1. Act not
unconstitutional.

obviously intended to fix the time for general elections, and also to provide an annual opportunity for the election of officers who, under the law, are to be chosen annually, or are to be elected in any year.

When the constitution was framed, and for many years afterward, members of the house of representatives were elected annually, and hence annual elections were necessary. An annual election is still necessary for the election of county commissioners, and under the statute township officers are now chosen at the annual November elections. It is clear that there was no attempt by this act to abrogate the annual election provided for in the constitution. It still remains for the election of such officers as are to be chosen at that time under either the constitution or the statutes. It has been held that the November election provided for in the constitution "is the general election, and that, whether few or many offices are to be filled." It has also been said "that the phrase 'general election' has a constitutional, defined, fixed and uniform meaning, and is independent of the terms of the offices or the number of officers to be elected." (*Morgan v. Comm'rs of Pratt Co.*, 24 Kan. 71; *The State, ex rel., v. Foster*, 36 id. 504, 13 Pac. 841.)

It is next contended that the postponement of the election of certain officers for a year is against the

<div style="margin-left:2em">2, 3. Readjustment of terms of office —postponement not unreasonable.</div>

constitutional policy that officers shall be chosen by election, and also contravenes the provision fixing the terms of such officers. No constitutional provision has been found which expressly or by implication limits the legislature in fixing the terms of district judges and county officers. A limit to the duration of terms is prescribed, but when the terms shall begin and end is fairly within the authority and discretion of the

legislature. That body possesses full legislative power, except such as is expressly or impliedly withheld by the state constitution or by the constitution and laws of the United States. Aside from the general grant lodging all legislative power in the house and senate (art. 2, § 1), it is expressly provided that the legislature ''shall have the power to provide for the election or appointment of all officers, and the filling of all vacancies not otherwise provided for in this constitution.'' (Art. 2, § 19.)

It is true, as was held in *The State, ex rel. Goodin, v. Thoman,* 10 Kan. 191, and *Peters v. Board of State Canvassers,* 17 Kan. 365, that when the constitution fixes the duration of a term it is not in the power of the legislature either to extend or abridge it. An examination of the act challenged, however, shows that no attempt has been made either to lengthen or shorten official terms, or to alter or affect the tenure of the incumbents of any of the offices named in the act. The policy of the statute, as we have seen, is to secure uniformity in the beginning of official terms, and also to avoid the expense, agitation and other disadvantages of frequent elections. The postponement of elections for one year is a reasonable and, in fact, the only practicable method of accomplishing the beneficial purpose of the legislature. If the legislature had postponed elections an unreasonable length of time, longer than was necessary to effect the avowed purpose, and so long as to betray an intention to make the offices appointive by preventing the people from choosing their officers at stated intervals and for regular terms, or, if it appeared that it was done merely to extend official terms and as a favor to incumbents of offices, there might be occasion for judicial interference and condemnation.

In Minnesota an election was postponed when the

judicial term was extended from four to six years, and it was claimed that it was beyond the legislative power. The supreme court of that state held that the legislature might make reasonable changes in respect to the time for holding the election for such offices, even to the extent of making the incumbents previously elected hold over during an interval of two years. The constitutional requirement for election of such officers was held to be satisfied, "if provision was made by law for the election of such officers at stated periods, unless these periods are fixed at times so far remote from each other as to raise the presumption of a design substantially to deprive these offices of their elective character, and this decision is in conformity with the prevailing legislative usages and construction ever since the adoption of the constitution. The legislature is not at liberty to abuse its authority in such cases, and we cannot presume it has done so in this case." (*Jordan v. Bailey*, 37 Minn. 174, 31 N. W. 778.) In that case a postponement for two years was deemed not to be an unreasonable change nor to warrant the court in imputing to the legislature an unworthy purpose in making it; and further, that the holding over of the incumbents during the interval of two years was not sufficient of itself to show an intention to deprive the office of its elective character.

The postponement of elections to secure public convenience or uniformity in the beginning of official terms has never been deemed violative of the state fundamental law. The annual election of justices of the peace, whose terms are fixed by the constitution, was postponed in 1875 from April till November, and it was provided that the incumbents should hold their offices during this interregnum of months between the end of the regular term under the old system and

the commencement of the regular term under the new system. (Laws 1875, ch. 92.) The change, which was made for the same purpose and was almost as radical as the one under consideration, has met with judicial approval. (*Odell v. Dodge*, 16 Kan. 446; *Jones v. Gridley*, 20 id. 584.)

In 1875 the legislature changed the time when the terms of county treasurers should begin from July till October. It designated the interval between the two regular terms as a vacancy, and authorized the county commissioners to fill it by appointment. This act was brought under the consideration of the court as to the succession of terms, and the question was decided on the theory that the legislature had full power to readjust the commencement of terms and had properly exercised that power. (*Horton v. Watson*, 23 Kan. 229. See, also, *Davis v. Patten*, 41 id. 484, 21 Pac. 677.)

In 1899 the terms of office of county superintendents were made to begin on the second Monday of May instead of the second Monday of January, and power was given to the county commissioners to fill the offices during the interval of four months by appointment. No test of the validity of the act has been had in this court, but the legislature acted on the assumption, and had a right to assume, that the approval of the acts changing the commencement of terms of justices of the peace and county treasurers warranted it in changing the commencement of the terms of county superintendents.

The period intervening between the regular terms, as readjusted under the law of 1901, is somewhat longer than the interregnum in the instances mentioned, but the length of time is not so great as to indicate a purpose other than to subserve public convenience and public welfare, and, as has already been

said, it is no longer than necessary to project a new system of official terms by which the beneficial purpose of the legislature is to be accomplished.

Much reliance is placed by relators on *The State, ex rel. Goodin, v. Thoman*, supra, where some of the questions involved here are discussed. We find nothing in it, however, which denies the power of the legislature to fix the commencement of terms or to provide for the interregnum arising from such readjustment. It simply decided that the constitutional term of four years for district judges could not be extended or changed by the legislature, and that the general machinery for conducting elections was applicable to the election of judges, where no specific provision was made for their election. The enactment of a law in the middle of a term intended either to extend or abridge the term is necessarily without force, and invalid. But the election and the inauguration of a new system for the commencement of terms were not presented to the court in that case nor in the case of *Peters v. The Board of State Canvassers*, supra, which followed the Thoman case.

It is true, as argued, that the legislature cannot make the judicial and county offices appointive rather than elective; and it is also true, as was remarked by Justice Valentine in *Rice v. Stevens*, 25 Kan. 302, that "the theory of our law is that officers shall be elected whenever it can be conveniently done; and that appointments to office will be tolerated only in exceptional cases." Here we have an exceptional case. The constitution requires that these officers shall be elected for regular terms, and if provision is made for such elections for regular terms the requirement of the constitution is satisfied. From the beginning it has been held that the legislature had the

33—63 KAN.

power to provide for interregnums, or exceptional terms, intervening between regular terms, or before the commencement of terms as established by law. In *Hagerty v. Arnold*, 13 Kan. 383, it was held that, the constitution having fixed the terms of offices, the legislature cannot make them more nor less, but for vacancies or exceptional terms the legislature has the power to say how the offices shall be filled up to the time when the regular terms commence, even if it requires two elections in one year. (See, also, *Comm'rs of Ottawa Co. v. Nelson*, 19 Kan. 243; *The State, ex rel., v. Comm'rs of Hodgeman Co.*; 23 id. 264; *Morgan v. Comm'rs of Pratt Co.*, 24 id. 71; *The State, ex rel., v. Mechem*, 31 id. 435, 2 Pac. 816; *Ward v. Clark*, 35 id. 315, 10 Pac. 827; *The State, ex rel., v. Foster*, 36 id. 504, 13 Pac. 841; *The State, ex rel., v. Breidenthal*, 55 id. 308, 40 Pac. 651.)

In making provisions for exceptional terms, or interregnums, arising from a change in the time of elections, the constitutional right of no officer is infringed. He is entitled to hold his office for the fixed term for which he was elected and until his successor has qualified. He does not hold, as in some of the states, until his successor is elected and qualified, but he holds over only till such time as his successor, who has been chosen according to law, has qualified and presents himself for the office. It will be observed that in some of the cases cited the vacancies or exceptional terms have been filled by provisional appointments, and in others that the incumbents have been permitted to hold over until the beginning of the regular term. It is immaterial whether the interval between the regular terms is called a vacancy, an interregnum, or an exceptional term. Whatever it is, there is no doubt power in the legislature, under

the authorities cited, to make provision for the occupancy of the office until the beginning of the next regular term, and the fact that an appointment is provided for will not render the act invalid.

The question of legislative power to postpone elections and readjust the commencement of official terms has been affirmatively decided by courts of other states, and most of them have constitutional limitations upon the terms and tenure of officers similar to those found in our own constitution.   The exercise of the power has been generally sustained.   (*In re County Treasurer*, 9 Colo. 631, 21 Pac. 474 ; *Sipe v. The People*, 26 id. 127, 56 Pac. 571 ; *State, ex rel., v. Compson*, 34 Ore. 25, 54 Pac. 348 ; *Loring v. Benedict, Auditor, et al.*, 15 Minn. 198 ; *Jordan v. Bailey*, 37 id. 175, 33 N. W. 778 ; *Sprague and others v. Brown*, 40 Wis. 612 ; *The People, ex rel., v. Supervisors, etc.*, 100 Ill. 495 ; *The State, ex rel. the Attorney-general, v. Ranson*, 73 Mo. 89 ; *The State, ex rel. the Attorney-general, v. McGovney*, 92 id. 428, 3 S. W. 867 ; *The State, ex rel. Harrison, v. Menaugh et al.*, 151 Ind. 260, 51 N. E. 117 ; *Scott v. State, ex rel. Gibbs*, 151 id. 556, 52 N. E. 163 ; *Larned v. Elliott*, 155 id. 702, 57 N. E. 901 ; *State v. McCracken*, 51 Ohio St. 123, 36 N. E. 941.)

The matter of dispensing with unnecessary elections and of securing uniformity in the commencement of official terms is one that is purely political in its character, and within the discretion of the legislature as well as within its power.   Whether the interval between the regular terms of judges is to be filled as specially provided for in the act—and that is the opinion of the writer—or whether it is to be filled under other provisions of the law, there is no doubt of the validity of the act, and that the secretary of state rightly determined that there was no election to be

held this year. Whether the incumbents of county offices affected by the act shall continue in office, or whether appointments shall be made under the general law, is not a question for decision at this time. It is enough to say that the act of the legislature in postponing the election and providing that the terms of all county officers shall begin at the same time does not conflict with any constitutional limitation.

The frequently used and well-worn objection, that the act contains more than one subject, and, therefore, is in violation of section 16, article 2, of the constitution, is made. The objection is without force. Only one general subject is embraced in the act and that relates to elections. (*Woodruff v. Baldwin*, 23 Kan. 491; *The State v. Barrett*, 27 id. 213; *Blaker v. Hood*, 53 id. 499, 36 Pac. 1115, 24 L. R. A. 854, and authorities cited.)

In each of the cases the motion to quash the alternative writ will be allowed and final judgment entered in favor of the defendants.