HENDRICKS *v.* HODGES, SEC'Y STATE.

## Opinion delivered January 24, 1916.

1. STATUTES—AMENDATORY STATUTES—INTERPRETATION.—Where a statute is re-enacted in substantially the same form as one already on the statute books, the presumption will be indulged that the lawmakers intended no changes other than those clearly expressed in the language of the new statute.

2. PUBLIC OFFICERS—TERMS—ELECTIONS—CONTROL BY LEGISLATURE.—By section 8, article III, of the Const. of 1874, the Legislature has the power to change the dates of biennial elections, the only limitation upon that power being that elections shall be held biennially, and within that limitation, the Legislature has absolute power to change the dates of the beginning of terms of public officers in order to conform to the changes in the dates of elections.

3. PUBLIC OFFICES—BEGINNING OF TERMS—CHANGE BY LEGISLATURE.—The Legislature, in carrying out the authority conferred upon it, to change the date of elections, may so fix the date of an election that any short or reasonable change in the beginning of terms of public offices may be made.

4. ELECTIONS—OFFICE OF CIRCUIT JUDGE—TIME OF ELECTION.—The terms of State officers, expiring in the year 1918, are not required, under act 107, page 402, Acts 1915, to be filled at the biennial election held during the year 1916.

Appeal from Pulaski Circuit Court; *Guy Fulk.* Judge; affirmed.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellant.

The decision in this case rests upon the construction of Act 107, Acts 1915. The history of the act goes back to article 3, section 8 Const. 1874. The Legislature in 1907 changed the date of the election to the 2d Monday in September in even years, etc. The Act of 1915 changed the date to the 1st Monday in November, 1916. The object was to combine State and National elections. The terms of all officers expire October 30. This appeal involves the necessity of circuit judges running for election in 1916.

1. The Constitution fixes the terms of circuit judges at four years. Art. 7, § 17.

2. Circuit judges shall be elected by the qualified electors of the several circuits. Art. 7, § 17.

3. The terms of all officers began October 30, 1874, and circuit judges held for four years from October in the year elected. 112 Ark. 291.

4. The Legislature has no more power to enlarge the term of office than it has to abridge it, and the term of office of a circuit judge is for a fixed period, regardless of who is the incumbent during the different periods. 48 Ark. 82.

There are two well defined lines of decision; (1) one is that a statute making reasonable changes in the terms for holding elections   *   *   *   though incidentally it results in extending the terms of present incumbents, does not violate the Constitution. 65 Pac. 705; 63 Kans. 505; 51 N. E. 117; 43 L. R. A. 408.

(2) The other holds that any attempt by a change in the time of election to continue an incumbent in office is void. 71 N. E. 748; 104 N. W. 197.

The main object was to provide for uniformity in elections. The whole act should stand together, and if the act is unconstitutional in this one particular, it should fail as to all. It is plain in meaning and terms. The terms of all circuit judges expire October 30, 1918, and they are required to run nearly two years before their incumbency begins. Const. Art. 19, § 5; *Jewett* v. *McConnell*, 112 Ark. 291.

*Mehaffy, Reid & Mehaffy,* for appellee.

There are no questions of fact involved in this case; its determination rests solely upon the construction of the Act of 1915. It should be construed so as not to conflict with the spirit and intent of the Constitution. It was the intention of the framers of the Constitution that the terms of all officers except Governor, Secretary of State, Auditor, Treasurer, Attorney General and Commissioner State Lands, etc., should begin uniformly. Const. Sched., § § 20-26; 48 Ark. 82; 112 *Id.* 291; 172 S. W. 260; Kirby's Dig., § 2850. No time being fixed by the act the terms of all officers ending in 1916 would begin as soon as the election returns are canvassed under section 2850, Kirby's Dig. This would be the latter part of November

or first part of December; but if circuit judges be required to run in 1916, they could not take their offices until the terms of the present incumbents expire, which is not in keeping with the Constitution. 107 Ark. 379; 35 Ark. 56; 37 *Id.* 491; 51 *Id.* 534; 60 *Id.* 343; 28 *Id.* 200; 3 *Id.* 285; 9 *Id.* 112; Const. Sched., § § 20-26; Kirby's Digest, § § 2850, 647-8; Const. Art. 19, § 20; 3 S. W. 867; 65 Pac. 705; 51 N. E. 117; 43 L. R. A. 408; 3 L. R. A. (N. S.) 887; 15 Minn. 199; 75 S. E. 866; 104 Pac. 860; 87 P. 870; 63 Kans. 505; 65 Pac. 705.

*J. C. Hawthorne, N. F. Lamb, Eugene Sloan* and *J. R. Turney.*

1. The act is unconstitutional. 48 Ark. 82; 172 S. W. 260; 163 Ind. 150; 71 N. E. 478.

2. If constitutional it does not require an election in 1916. 174 S. W. 248; Suth. Stat. Const., par. 139; 58 Pac. 50; 110 U. S. 629; *Ib.* 739; 26 A. & E. Enc. (2 ed.) 649.

*Abe Collins, Amicus Curiae.*

It is obvious that the terms of all circuit judges "will expire before the next general election" after 1916. 172 S. W. 260. The intent of the lawmakers must be ascertained. 2 Lewis, South. on St. Const., § 348; 76 Ark. 303. Where the language is free from ambiguity, plain and consistent, there is no room for construction. 11 Ark. 44; 46 *Id.* 159; 93 *Id.* 42; 35 *Id.* 56; 24 *Id.* 487; 104 *Id.* 583; 102 *Id.* 205; 28 *Id.* 200; 97 *Id.* 38; 20 Wend. 562; 11 N. Y. 602. Compare 46 Ark. 159; 47 *Id.* 404. *The Legislature meant what it said.* The law abhors vacancies in office. 113 Ind. 434; Mechem Pub. Officers, § 397; Throop. Pub. Officers, § 308. Each word and phrase of an act should be given meaning and effect. 11 Ark. 44; 30 *Id.* 135; 99 *Id.* 149; 89 *Id.* 378; 76 *Id.* 303; 76 *Id.* 303; 15 *Id.* 555; 2 *Id.* 229; 17 *Id.* 608; 28 *Id.* 200; 71 *Id.* 556; 67 *Id.* 552. The question is not what the Legislature meant but what its language means. 104 Ark. 583; 6 Ark. 9-12; See also, 76 *Id.* 443; 45 *Id.* 387; 47 *Id.* 388; 44 *Id.* 265.

*James E. Hogue, Amicus Curiae.*

The act is unconstitutional. 112 Ark. 291; 48 *Id.* 82; art. 3, § 8, Const.; *Ib.,* art. 19, § 5.

McCULLOCH, C. J.  The General Assembly of 1915 enacted a statute* amending the election law of the State so as to change the date of the regular biennial election from the second Monday in September to the "next Tuesday after the first Monday in November," thus fixing a uniform date for all biennial elections, both State and National.

The statute reads as follows: "Section 1.  That on the next Tuesday after the first Monday in November, 1916, and every two years thereafter there shall be held an election in each precinct and ward in this State for the election of all elective State, county and township officers whose term of office is fixed by the Constitution at two years; and State Senators in their respective districts when the terms for which senators shall have been elected shall expire before the next general election; and for judges of the Supreme and circuit courts when the terms of office of any judge shall expire before the next general election; and for United States Senators and for Representatives in Congress of the United States for each Congressional District; and for prosecuting attorneys."

Appellant conceives that the new statute requires the election of circuit judges in the year 1916, and as he is a candidate for that office in the Sixth Judicial Circuit he seeks to compel the Secretary of State to receive and file his pledge, conformable to the statute known as the Corrupt Practices Act,† which requires all candidates for district offices to file with the Secretary of State, more than thirty days before a primary election, a pledge in writing stating that they are familiar with the requirements of said statute and that they will in good faith comply with its terms.

The sole question presented for decision on this appeal is whether or not circuit judges must be elected at the election to be held during the year 1916.  The contention is that the terms of circuit judges end on October 31, 1918, and that their successors must be elected in the

*Act No. 107, p. 402, Acts of 1915.
†Act 308, p. 1252, Acts of 1913.

year 1916 for the reason that it is the election next preceding the expiration of the terms. If that contention be sound, those offices will be filled at the election held nearly two years before the terms end.

It must be conceded that a literal reading of the statute sustains the contention, for the statute provides in so many words that the election shall be "for judges of the Supreme and circuit courts when the terms of office of any judge shall expire before the next general election." There are several reasons why it is apparent that the framers of the statute did not intend what a literal meaning of the statute, as a whole, would imply. In the first place, the statute provides that senators of the United States shall be elected at each biennial election, but we know that the lawmakers did not intend to accomplish that result inasmuch, as the Constitution of the United States fixes the terms of senators at six years. In the next place, the interpretation contended for by learned counsel for appellant would require all of the State Senators, those whose terms begin in the year 1918 as well as those whose terms begin in the present year, to be elected at the next election to be held in November, 1916. It is inconceivable that that was the intention of the framers of the statute, for it is certainly contrary to the policy of the State to elect senators so long a time before the commencement of their service. Besides, it would be in direct conflict with the express letter of the Constitution, which provides that the terms of senators shall begin with the dates of their election. Article 5, section 15, as amended by the Seventh amendment. It would also conflict with that section of the Constitution (Art. 5, sec. 2) which provides that terms of senators shall be divided into two classes to be filled at alternate biennial elections. Senators could not, therefore, be elected in 1916 for terms to begin in the year 1918, and that part of the statute is void if we give its language a literal meaning.

The statute would, under that interpretation, also be in conflict with another statute with reference to the elec-

tion and qualification of officers, which there is little reason to believe that the lawmakers meant to change. We refer to the statute (Kirby's Digest, section 2850), which provides that the State Board of Election Commissioners shall, within thirty days after the time allowed to make the returns of elections by county commissioners, cast up the votes and determine the result, and that all of the officers required by law "shall be immediately commissioned by the Governor." Also Kirby's Digest, section 647, which provides that all State and county officers who are required by law to be commissioned by the Governor "are required to forward the legal fee for their commissions to the Treasurer of State within sixty days after their election, and they shall, after said commissions have been received, forward within fifteen days their duplicate oath to the Secretary of State, to be by him recorded and filed in his office." The purpose of those statutes was to fix a time for canvassing the returns and to put a limit upon the time in which officers may qualify. The statute clearly contemplates that officers elected shall immediately take office and enter upon the discharge of the duties thereof. Yet, if the interpretation contended for be sustained, the Legislature has by this new statute now under consideration postponed for nearly two years the taking of office by those who are elected thereto. Surely the lawmakers have not intended, merely by implication, to change the whole policy of our laws and to repeal other statutes without giving more clear expression of that intention.

If we take into consideration the history of the legislation in this State fixing the time for holding elections, it becomes clear that there was no intention on the part of the Legislature to do more than to postpone the date of the State election so as to conform to the date of the national election. In other words, it was manifestly the sole purpose of the Legislature to consolidate elections in the State. The title of this act is "An Act fixing the time for the general election in the State of Arkansas," and it was a copy of the then existing statute, except

that the date is changed and the clause inserted about the election of United States Senators and Representatives in Congress.

(1)    It will be remembered that the Constitution of 1874 was submitted to the people for adoption on October 13, 1874, and the act of submission provided for the election of officers thereunder on the same date. The schedule of the Constitution (section 20) provided that all officers thus elected should "qualify and enter upon the duties of their office within fifteen days after they shall have been duly notified of their election." The Constitution fixed the first Monday in September as the date for biennial elections in the State, but provided that the General Assembly could fix a different time. Art. 3, sec. 8. The first General Assembly after the adoption of the Constitution of 1874, which met in January, 1875, enacted a general election law, fixing the first Monday in September as the date for the regular biennial elections. The first section of that statute was in the form of the present statute, with the changes indicated above. In 1907 the General Assembly passed an amendatory statute changing the date of the general election from the first Monday in September to the second Monday in September, still preserving the identical language of the old statute. Now, in interpreting the amendatory statute, we ought to follow the well established rules of statutory construction, and one of those rules is that where a statute is re-enacted in substantially the same form as the old one, the presumption should be indulged that the lawmakers intended no changes other than those clearly expressed in the language of the new statute. 26 Am. & Eng. Ency. of Law, 649; *McDonald* v. *Hovey,* 110 U. S. 629. That idea was expressed by this court in the recent case of *State* v. *Kansas City & Memphis Railway & Bridge Co.,* 117 Ark. 606, 174 S. W. 248. In *State of Arkansas ex rel.* v. *Trulock,* 109 Ark. 556, we said that amendatory words of a statute are subject to the same rules of construction as any other parts of the statute, and that "the literal meaning may be put aside in order to carry out the obvious intention of the law-makers

as otherwise indicated.'' In that case we quoted with approval the following from the work of Mr. Sutherland on Statutory Construction (volume 2, section 376) : ''The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction, it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.''

We ought, therefore, to indulge the presumption that the Legislature did not intend to change the whole policy of our laws in order merely to bring about the consolidation of elections, for in framing the statute the only change actually made in the language was that of inserting the new date and also the mention of other officers (Senators and Congressmen) to conform to the requirements of the national election law.

Attention is called in one of the briefs to the policy which has always been observed by the Legislature of providing for the election of officers before the expiration of the term of the incumbent so that no vacancy would occur. This may be conceded to be true, and yet it does not necessarily follow that the Legislature failed to observe that policy in passing this statute. While it is true that terms of constitutional officers expire on October 31, and that the election in 1916 will take place after the expiration of the terms, it does not follow that there is any constitutional inhibition against the exercise of such a power by the Legislature which would result in a change in the commencement of the new terms. It is argued in one of the briefs that the whole statute is void because it necessarily results in the extension of terms of county officers, and in other quarters it is argued that the Legislature, for that reason, must be presumed to have intended the election of circuit judges before the expiration of the terms, rather than have an election a week or more after the expiration of the terms. There

is no intention manifested by the Legislature to extend the term, that is to say there is no intention to pass a statute merely for that purpose. If an extension of the terms of those now in office necessarily results from a construction of the statute which postpones the election of officers until the election to be held during the year in which the terms expire, it is a mere incident to the change in the dates of elections, and is not deemed the primary purpose of the lawmakers. The Constitution fixes the duration of terms, but does not in express words fix the beginning of terms. The precise date of commencement of terms was worked out by this court in construing the meaning of the framers of the Constitution, and it was found that because of the fact that the terms were to begin at the earliest date that officers who were elected could be commissioned, that October 31 was the date of commencement of all terms for constitutional officers. *Jewett* v. *McConnell*, 112 Ark. 291; *State, ex rel.* v. *Cotham*, 116 Ark. 36, 172 S. W. 260.

(2)    There is an express grant in the Constitution to the Legislature of the power to change the dates of biennial elections. Article 3, section 8. The only limitation upon that power is that elections shall be held biennially, and, of course, the Legislature has no power to provide otherwise. Within those limitations, the Legislature has absolute power to change the dates, and this necessarily implies the power to change the dates of the beginning of terms in order to conform to the changes in the dates of elections. It is not to be thought that the framers of the Constitution meant to fix an unchangeable date for the beginning of the terms, and at the same time give complete power to the Legislature to change the date of elections. The change in the date of the term, therefore, results as a mere incident to the change in the date of the election, and we find nothing in the Constitution which prohibits that.

(3)    It is true we have held that the Legislature has no power to extend the duration of terms. *Smith* v. *Askew,* 48 Ark. 82; *State ex rel. Wood* v. *Cotham, supra.* Mr. Justice Smith, in the case first cited above, used lan-

guage which is more emphatic than accurate in saying that the terms could not be extended for a single day. That language must, however, be construed with reference to the point that was then under consideration, and it is merely an authority for the statement that where the Constitution itself fixes the duration of terms, it is beyond the power of the Legislature to extend them. It must be limited, however, to the further view that there is no intention found to prevent the Legislature from carrying out the authority conferred upon that body to change the date of elections, and that any short or reasonable change in the beginning of terms, as an incident to the change in the dates, is not forbidden. There are numerous authorities cited on the briefs of counsel which sustain the view we are attempting to express now, to the effect that even in the face of constitutional provisions fixing the duration of terms of office, unless there is an express provision fixing the beginning of terms, and the power is conferred upon the lawmakers to change the dates of elections, there may be a change in the beginning of terms as a mere incident to the change in the date of elections.

The correctness of this view of the law is emphasized by the fact that the framers of our Constitution have put into that instrument a provision that "all officers shall continue in office after the expiration of their official terms until their successors are elected and qualified." Article 19, section 5. The framers of the Constitution doubtless had such an emergency as the present one in mind when that provision was framed. At least, it is adapted to this emergency and prevents a vacancy occurring on account of the short postponement of the filling of the office by reason of the changed date of the election to a date subsequent to the expiration of the terms. The Legislature having power incidentally to change the beginning of the terms, the beginning of terms of all officers subsequently elected will be changed so as to conform to the new date fixed for elections. What the precise date for beginning of the new terms, under the new

election law, will be, it is unnecessary, on this occasion, to determine.

Among the cases on this subject some of which admit the power of the Legislature to incidentally change the dates of beginning and ending of terms of constitutional officers, the following are found to be directly in point: *Wilson* v. *Clark*, 63 Kans. 505, 65 Pac. 705; *State* v. *Menaugh*, 151 Ind. 260, 51 N. E. 117, 43 L. R. A. 408; *Gemmer* v. *State*, 71 N. E. 478; *State* v. *Galusha*, 104 N. W. 197; *State ex rel. Jones* v. *Foster* (Montana), 104 Pac. 860; *Jordan* v. *Bailey*, 37 Minn. 174, 33 N. W. 778; *Meredith* v. *Tallman*, 24 Wash. 426, 64 Pac. 759; *State, ex rel. Attorney General* v. *Ranson*, 73 Mo. 78. See, also, note to *State* v. *Plasters*, 3 L. R. A. (N. S.) 887.

In *Wilson* v. *Clark, supra,* in speaking of a statute of the State of Kansas, passed for the purpose of consolidating elections, the Supreme Court of that State said: "No constitutional provision has been found which expressly or by implication limits the Legislature in fixing the terms of district judges and county officers. A limit to the duration of terms is prescribed, but when the term shall begin and end is fairly within the authority and discretion of the Legislature. * * * The policy of the statute, as we have seen, is to secure uniformity in the beginning of official terms, and also to avoid the expense, agitation, and other disadvantages of frequent elections, * * * If the Legislature had postponed elections an unreasonable length of time, longer than was necessary to effect the avowed purpose, and so long as to betray an intention to make the offices appointive by preventing the people from choosing their officers at stated intervals and for regular terms; or if it appeared that it was done merely to extend official terms, and as a favor to incumbents of offices there might be occasion for judicial interference and condemnation."

(4)   Our conclusion is that the terms of office expiring in the year 1918 are not required to be filled at the biennial election held during the present year, and that inasmuch as appellant's candidacy is premature, the

Secretary of State was correct in refusing to accept and file his pledge in conformity with the governing statute. Judgment affirmed.