The Honorable Chaney Taylor, Jr. State Representative Post Office Box 2721 Batesville, AR 72503-2721
Dear Representative Taylor:
I am writing in response to your request for an opinion on a question I will paraphrase as follows:
 Are the term extension provision(s) of House Bill 2553 and Senate Bill 917 constitutional?
RESPONSE
In my opinion, the answer to this question is in all likelihood "yes," provided that the legislature extends the terms of certain appeals court judges as little as necessary to realize the desired public policy goal of having staggered terms of office.
Section 1 of these identical bills recites the following purpose:
 (a) Under Act 889 of 1999, the Arkansas Court of Appeals Apportionment Commission was created to review the electoral districts for the Court of Appeals and make a recommendation on the changes to be made effective January 1, 2004. The commission has reviewed the current districts and the data from the 2000 census, received input from judges, lawyers, and the general public, and considered the requirements and restrictions of federal and state law. Because of major shifts in population which have occurred since the current districts were created utilizing the 1970 census, a realignment of these districts is necessary.
 (b) The Arkansas Court of Appeals consisted of six (6) judges when it was first created. The number of members grew to nine judges in 1996 and to twelve (12) judges in 1997. However, when the new judgeships were created, no plan was made to stagger the dates of the end of the terms for each of the judges. As a result, the terms of eight (8) of the twelve (12) judges end in 2004. In order to provide for an orderly transition of members and create a reasonable level of stability on the court, it is necessary to adjust the current terms of office.
 (c) It is the purpose of this act to create new electoral districts for the Arkansas Court of Appeals and to establish the dates for electing the judges within each of these districts.
Section 2 of the bills defines the new districts. Section 3 sets the term of office of every judge at eight years. It further establishes four groups of districts and schedules elections for various judgeships in the districts in 2004, 2006, 2008 and 2010. Section 4 provides:
 Each currently serving member of the Court of Appeals shall continue in office until his or her position shall be subject to election, as provided for under this act, regardless of the date otherwise set as the expiration of his or her term, and regardless of any changes in the geographical boundaries in the district from which he or she was elected.
At issue is whether the legislature is empowered to modify the terms of sitting judges in the manner reflected in the passage just recited. In addressing this question, I must start from the proposition that the General Assembly is empowered to enact whatever legislation it deems appropriate unless some provision of the constitution expressly declares otherwise. The Arkansas Constitution is not a grant but rather a limitation of powers, and the legislature may rightfully exercise the power of the people, subject only to constitutional restrictions and limitations. Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979).[1]
The pertinent constitutional provision in applying this standard is Ark. Const. amend. 80, which reorganized the system of courts in Arkansas, primarily by abolishing chancery courts and creating district courts in lieu of existing municipal courts. Amendment 80 further provides conditions for the transition to the new system. Section 16(A) of Amendment 80 directs that judges of the Court of Appeals serve eight-year terms. Accord A.C.A. § 16-12-102. Section 19(A) provides that judges "in office at the time this amendment takes effect[2] shall continue in office until the end of the terms for which they were elected or appointed." The question, then, is whether section 19(A) should be interpreted as precluding the legislature from modifying the terms of sitting judges — or, stated differently, whether this section absolutely fixes the terms of judges sitting on the effective date of the amendment.
In my opinion, the Arkansas case that most directly addresses this issue is Hendricks v. Hodges, 122 Ark. 82, 182 S.W. 538 (1916), in which the court offered the following analysis of a statute that would extend the terms of sitting circuit court judges by changing the dates of elections:
 If an extension of the terms of those now in office necessarily results from a construction of the statute . . ., it is a mere incident to the change in the dates of elections, and is not deemed the primary purpose of the lawmakers. The Constitution fixes the duration of terms, but does not in express words fix the beginning of terms. . . .
* * *
 There is an express grant in the Constitution to the Legislature of the power to change the dates of biennial elections. Article 3, § 8. The only limitation upon that power is that elections shall be held biennially, and, of course, the Legislature has no power to provide otherwise. Within those limitations, the Legislature has absolute power to change the dates, and this necessarily implies the power to change the dates of the beginning of terms in order to conform to the changes in the dates of elections. It is not to be thought that the framers of the Constitution meant to fix an unchangeable date for the beginning of the terms, and at the same time give complete power to the Legislature to change the date of elections. The change in the date of the term therefore results as a mere incident to the change in the date of the election, and we find nothing in the Constitution which prohibits that.
 It is true we have held that the Legislature has no power to extend the duration of terms. Smith v. Askew, 48 Ark. 82, 2 S.W. 349; State ex rel. Wood v. Cotham, supra. Mr. Justice Smith, in the case first cited above, used language which is more emphatic than accurate in saying that the terms could not be extended for a single day. That language must, however, be construed with reference to the point that was then under consideration, and it is merely an authority for the statement that, where the Constitution itself fixes the duration of terms, it is beyond the power of the Legislature to extend them. It must be limited, however, to the further view that there is no intention found to prevent the Legislature from carrying out the authority conferred upon that body to change the date of elections, and that any short or reasonable change in the beginning of terms, as an incident to the change in the dates, is not forbidden. There are numerous authorities cited on the briefs of counsel which sustain the view that we are attempting to express now, to the effect that, even in the face of constitutional provisions fixing the duration of terms of office, unless there is an express provision fixing the beginning of terms, and the power is conferred upon the lawmakers to change the dates of elections, there may be a change in the beginning of terms as a mere incident to the change in the date of elections.
122 Ark. at 90-91.
The court in Hendricks stated unequivocally that even when the constitution specifies a certain term for an office, as Amendment 80 does for appeals court judgeships, the legislature has the power to make reasonable changes in the dates when terms will commence despite the fact that doing so will extend the incumbent's term. The court declared that such holding-over was expressly anticipated in Ark. Const. art. 19, § 5, which provides that "all officers shall continue in office after the expiration of their official terms until their successors are elected and qualified."[3] Id. at 91. As the court noted: "The Legislature having power incidentally to change the beginning of the terms, the beginning of terms of all officers subsequently elected will be changed so as to conform to the new date fixed for elections." Id. Accordingly, so long as the extension of an incumbent's term is short, reasonable and merely incidental to the legislature's right to control the commencement of terms, the legislation will pass constitutional muster. See Hutcheson v.Pitts, 170 Ark. 248, 252, 278 S.W. 639 (1926) (holding that "the Legislature has the power to readjust the commencement of official terms within reasonable limits"); but see Weber v. Pryor, 259 Ark. 153,155-56, 531 S.W.2d 708 (1976) (implying in dictum that if the term of a chancery judge were "limited by constitutional provision," rather than merely "subject to legislative control," it might be impermissible to extend the terms of certain chancery judges in order to effect uniform expiration dates for the terms of all chancellors).
Given the principles set forth in Hendricks, I believe the pertinent question is whether the one-time term extensions effected by the bills at issue qualify as "short and reasonable." Answering this question will entail conducting a factual inquiry of the sort I am neither able nor authorized to undertake. However, I can and will opine that the legislative goal of staggering terms in order to ensure stability on the court of appeals is reasonable. Section 3 of the proposed bills calls for staggered elections for the various positions in the various districts spanning a period from 2004 to 2010. I am unaware of how these schedules would affect the terms of the incumbents in the various positions. In my opinion, Amendment 80 would flatly prohibit the legislature from shortening the term of any incumbent to less than the constitutionally mandated eight years. However, I do not believe the constitution would preclude the legislature from reasonably and incidentally extending an incumbent's term. Assuming the legislature has staggered the elections in a way that minimizes as much as possible the extension of any incumbent's term, I believe a reviewing court might well conclude that the legislation accords with constitutional mandates.
The proposed legislation is in all material respects the obverse of legislation approved as constitutional by the North Carolina Supreme Court in State ex rel. Martin v. Preston, 325 N.C. 438, 385 S.E.2d 473
(1989). At issue in Preston was whether the legislature, faced with a constitutional provision setting an eight-year term for superior court judges, might postpone the election date for eight judges for two years and for a ninth judge for four years in order to eliminate staggered terms. In approving the challenged statute, the court offered the following analysis:
 Our Constitution provides that superior court judges "shall hold office for terms of eight years and until their successors are elected and qualified." N.C. Const. art. IV, § 16. The plaintiff argues, and the trial court concluded, that the provisions of Chapter 509 delaying certain elections unconstitutionally "extended" certain incumbent judges' terms of office. The defendants argue that the terms of office were not extended; the legislature merely created a one-time interim, for the briefest period possible, between terms of office to serve a legitimate public purpose. The defendants contend that the incumbents simply are holding over until their successors are elected and qualified.
 We conclude that the effect of the provisions of Chapter 509 postponing certain elections was to cause each superior court judgeship within a multi-seat district to be placed on the same election schedule as the other judgeships in that district. Superior court terms of office, under our Constitution, must be eight years in length, so staggered terms could not be eliminated by shortening some existing terms of office. Rhyne v. Lipscombe, 122 N.C. 650, 29 S.E. 57 (1898). Instead, the legislature eliminated staggered terms within multi-seat judicial districts by creating a one-time interim or hiatus between certain terms of office. The current terms were not extended; they expire at the end of their eight-year duration. The next eight-year terms do not commence immediately upon the expiration of the old terms, however, but are instead made to commence two years, or in one case four years, later. Since no successors will be elected and qualified at the expiration of the old terms, the incumbent judges will continue to serve. Our Constitution anticipates such "hold over" situations by providing that elected judges remain in office "until their successors are elected and qualified." N.C. Const. art. IV, § 16.
385 S.E.2d at 480.
The court in Preston quoted with approval the following from Wilson v.Clark, 65 P. 705, 707 (Kan. 1901):
 [W]hen the constitution fixes the duration of a term, it is not in the power of the legislature to either extend or abridge it. An examination of the act challenged, however, shows that no attempt has been made to either lengthen or shorten official terms, or to alter or affect the tenure of the incumbents of any of the offices named in the act. The policy of the statute, as we have seen, is to secure uniformity in the beginning of official terms. . . . The postponement of elections for one year is a reasonable, and, in fact, the only practicable, method of accomplishing the beneficial purpose of the legislature. If the legislature had postponed elections an unreasonable length of time, longer than was necessary to effect the avowed purpose, and so long as to betray an intention to make the offices appointive by preventing the people from choosing their officers at stated intervals and for regular terms; or if it appeared that it was done merely to extend official terms, and as a favor to incumbents of offices, there might be occasion for judicial interference and condemnation.
385 S.E.2d at 480.
As previously noted, I believe Hendricks stands for the proposition that even if the constitution mandates a particular term for an official, Article 19, § 5 authorizes an official to hold over beyond what would otherwise have been the expiration of that term if the holding-over is a reasonable, incidental consequence of the legislature's exercise of its constitutionally recognized power to change the dates of a term. In my opinion, nothing in Amendment 80 should be read as qualifying this principle. Section 19(A) of the amendment merely provides that appeals court judges will serve "until the end of the terms for which they were elected or appointed." Unlike the law applied by the North Carolina Supreme Court in Preston, under Arkansas law, holding-over is considered an extension of one's term, as opposed to service beyond it. As the court noted in Faulkner v. Woodard, 203 Ark. 254, 257, 156 S.W.2d 243 (1941):
 In Wood v. Miller, 154 Ark. 318, 242 S.W. 573, this court said: "Where the legal incumbent of the office is authorized to hold over after the expiration of his term until his successor is elected and qualified, the period of his holding over is as much a part of his term as the regular period fixed by law. Kimberlin v. State, 130 Ind. 120, 29 N.E. 773, 30 Am. St. Rep. 208, 14 L.R.A. 858. He has the legal right during that period to protect his incumbency from one who unlawfully invades it or to sue a usurper to recover it."
Accordingly, I believe that allowing certain incumbent judges to serve extended terms in order to enable their successors to serve staggered terms would probably be deemed consistent with constitutional mandates since it would not entail service by any of the judges beyond "the end of the terms for which they were elected or appointed."
I strongly doubt that the electorate, in adopting Amendment 80, intended to preclude the legislature from acting to stagger the election of appeals court judges. Although no Arkansas court has yet directly addressed the issue, I believe a court would follow the examples of North Carolina and Kansas in holding that a minimal extension of terms in order to regulate the pattern of elections would not offend the constitution. In my opinion, just as the North Carolina legislature was empowered to extend judicial terms in order to eliminate staggered terms, the Arkansas legislature in this instance is empowered to extend judicial terms in order to expedite staggered terms, subject only to the proviso that the extension of terms should be as minimal as possible to achieve the public end of staggering terms.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] By contrast, the United States Constitution is a grant of powers beyond the scope of which the federal government has no power to act. SeeState v. Ashley, 1 Ark. 513, 538 (1839); St. Louis, I.M. S. Rwy Co.v. State, 99 Ark. 1, 14 (1911); Baratti v. Koser Gin Co., 206 Ark. 813,817 (1944); and Smart v. Gates, 234 Ark. 858, 860 (1961).
[2] July 2001. Ark. Const. amend. 80, § 21.
[3] In the attached Ark. Op. Att'y Gen. No. 97-198, which predated the adoption of Amendment 80, my predecessor addressed as follows the question of whether the six appeals court judges appointed pursuant to the then applicable A.C.A. § 16-12-101 might hold over in office pursuant to Ark. Const. art. 19, § 5 until the legislature provided for the election of their successors:
 Although there is no Arkansas case squarely on point, there are a number of cases from Arkansas providing general support for the conclusion that the six appointees should hold over until the General Assembly makes provision for the election of their successors. See Weber v. Pryor, Governor, 259 Ark. 153, 531 S.W.2d 708 (1976) (legislature may extend the terms of chancellors, after reapportionment, as long as done reasonably and without effort to punish or reward any judicial officer); McCoy v. Story, 243 Ark. 1, 417 S.W.2d 954 (1967) (county judge may properly hold over until general election in absence of legislation providing for a special election); Weas v. Montgomery, 180 Ark. 989, 23 S.W.2d 969 (1930) (circuit judge deemed to be holding over when election was held in wrong year and not held at all in correct year); Hendricks v. Hodges, Secretary of State, 122 Ark. 82, 182 S.W. 538 (1916) (the legislature may change the beginning of terms of circuit judges and short and reasonable extension of terms is appropriate under the holdover provisions of article 19, § 5 absent any intention to render elective offices appointive); and State v. Scott, 9 Ark. 270 (1848) (new amendment providing for popular election of circuit judges (rather than by appointment of the General Assembly), does not automatically oust sitting circuit judges on its adoption, but rather, they hold over until provision can be made by the General Assembly for the election of their successors).